Walden *v.* Murdock.

## WALDEN *v.* MURDOCK.

AN appeal from an order refusing a new trial, although taken more than one year after the rendition of judgment, brings up the whole record, and the Supreme Court, if satisfied that the Court below erred in refusing a new trial, may reverse the order and grant a new trial, the effect of which will be to vacate the judgment.

When an appeal is taken from an order granting or refusing a new trial, no statement on appeal need be made or filed after the entry of the order, but the statement prepared and used on the hearing of the motion in the Court below, will be sufficient in the Supreme Court.

A *bona fide* purchase made by a creditor of the goods of his debtor, who is in insolvent circumstances, is not fraudulent, merely because such creditor thereby obtains a preference over other creditors, and may be aware at the time that his purchase will have the effect of delaying or defeating the other creditors in the collection of their debts.

A *bona fide* sale of cattle roaming at large over the plains, upon a defined or certain range, is not fraudulent as against the creditors of the vendor, merely because the sale is not followed by an immediate delivery of possession ; but the parties are entitled to a reasonable time after the sale, to prepare for a rodeo, and give the proper notices thereof, in order that they may separate the cattle purchased from stock owned by others, and to properly mark and brand them ; and in the meantime the rights acquired by the purchaser will not be lost.

Where cattle, roaming at large, purchased in good faith, are collected together and marked with the brand of the purchaser, and then allowed to pasture on their accustomed range, these acts constitute a good delivery and continued change of possession.

A mere execution of a bill of sale of cattle roaming at large, in which the brand with which they are marked, is described, accompanied by a delivery of the branding iron, does not constitute a delivery of possession of the cattle.

APPEAL from the District Court, Thirteenth Judicial District, Stanislaus County.

Walden *v.* Murdock.

The cattle levied on by the Sheriff, and for which this suit was brought, were that portion of the herd sold by Wells to Walden, roaming at large over the plains, and of which Walden had not, previous to the levy, taken actual possession.

The verdict was rendered and the judgment entered up June 14th, 1861. On the same day plaintiff filed and served notice of motion for a new trial, and within five days thereafter filed and served his statement on motion for new trial. No other statement was made on appeal from the order.

The other facts are stated in the opinion.

*John B. Hall,* for Appellant.

I. The point is made by the respondent's counsel that more than a year having elapsed between the entry of the judgment and the appeal, this Court has no jurisdiction to hear it so far as the judgment is concerned; and that the record showing no statement of the case, made and filed after the order refusing a new trial, the statement in the record cannot be referred to the order, and "the whole case rests on the judgment roll," and the order of refusal must be affirmed.

Our statute provides for the immediate entry of a judgment on the verdict, unless the case be reserved for argument. (Prac. Act, Sec. 197.)

By the English rule, on the contrary, no judgment was entered on the verdict until the first four days of the next succeeding term had expired. (3 Black. Com. side p. 387–396.) But if before the end of that term a motion for a new trial came, the entry of the judgment was thereby suspended. (Id.) The same effect was formerly allowed (our statutory provision to the contrary) to the motion in many of the District Courts of this State, and the entry of the judgment was not made by the Clerk until the Court or Judge decided the motion against the moving party; and until then all proceedings subsequent to verdict were suspended. This practice regarded the motion, when perfected by the statement, as equivalent to a reservation of the Court for argument of the question, Shall judgment be entered on the verdict, or shall the issue be retried? The motion stood for argument by the statute. (Id. 195.)

The decision in *Hutchinson* v. *Bours* (13 Cal. 50) suggests a different practice, and pursuant thereto the judgment was entered by the Clerk, although the motion and statement intervened. But this decision has not made a material change in the effect of the motion. It only enlarges its effect if granted, and causes the order to extend to setting aside the judgment as well as the verdict. (*Hutchinson* v. *Bours*, 13 Cal. 50 ; *Lurvey* v. *Wells*, 4 Id. 106.)

Now, the appellant maintains the converse of respondent's proposition, and says that the judgment which rests on the verdict follows the motion, and whether it is to continue to exist or perish depends exclusively and absolutely on the fate of the motion.

What is a new trial? " A reëxamination," says the statute, " of an issue of fact in the same Court after a trial and decision by the jury, Court, or referee." (Prac. Act, Sec. 192.) " The former verdict or other decision may be vacated," etc. (Id. 193.)

The motion brings up the single question, Shall the verdict be set aside or vacated ? If the verdict be set aside, the judgment falls necessarily, and it would not require a declaration to that effect in the order of the Court. If the verdict be not canceled the judgment stands in full force and effect, still remaining subject to the power of the appellate tribunal to order that to be done which the Court below refused.

If, then, the power vested with the Court at the date of its action on the motion, either to vacate or to ratify the verdict, the right to appeal was saved to either party deeming himself aggrieved by the order, and to seek at the hands of the appellate tribunal a correction of the alleged wrongful exercise of the power. And if the higher tribunal shall order that to be done which was done by the order appealed from, the same consequence follows as though it had been so ordered by the inferior Court, viz.: the verdict is set aside, and the judgment which never had more than contingent vitality, also falls for want of a foundation. And the Supreme Court acquires full power over the judgment, although no appeal is directly taken therefrom by means of the order made on the motion from which an appeal is taken. (*Lower* v. *Knox*, 10 Cal. 480 ; *Hanscom* v. *Tower*, 17 Id. 518 ; *Burdge* v. *Gold Hill Co.*, 15 Id. 198.)

Walden v. Murdock.

To enable the Court to review the judgment on the appeal from the order, the statement filed on making the motion, if filed within twenty days after judgment is entered, is sufficient, and no other statement is necessary. (*Loucks* v. *Edmondson*, 18 Cal. 203, 204.)

The plaintiff asked the following instruction:

That if the jury shall believe, from the evidence, that Wells was indebted to the plaintiff, on the twenty-eighth day of November last, in the sum of two notes, the one from Wells to Walden for eight hundred and thirty-six dollars and interest; and the one, Wells as principal and Walden surety, to Crow, for six hundred and fifty dollars and interest, in all, the sum of $1,800, or thereabouts, it was lawful for Wells to sell, and Walden to buy, all Wells' cattle for a fair price, and in payment of said debt; although the jury should further believe, that said Wells was, at the time, in insolvent circumstances, and Walden knew it; and although such sale and transfer operated as a preference to Walden over any other creditor, or creditors; and although said Walden may have known that other creditors would thereby be defeated of his or their debts.

The Court refused this instruction, and thereby declared the rule therein embodied, as applied to the hypothetical state of facts, was not the law. This was error, which necessarily under the condition of the proofs, must have operated to the prejudice of the plaintiff's case when under deliberation by the jury. The instruction is no abstract proposition of law, having no reference to the case in hand; but it announces a rule which results from facts directly put in issue by the pleadings, and as to which most testimony has been offered.

One of the chief defenses, is a fraudulent and fictitious sale. It is a right of a creditor to protect himself by his vigilance, and if need be, to save himself by means of a purchase of his debtor's property, either in part, or in the whole, although the debtor may be *in extremis* of pecuniary embarrassment, and the sale work a preference over as well as actually to defeat equally meritorious claims, even with the knowledge of both contracting parties. The principle of law, not now to be questioned in this State, embodying this rule, is briefly and forcibly expressed by the Supreme Court of

the United States, in these words: "The debtor may prefer one creditor, pay him fully, and exhaust his whole property, leaving nothing for others, equally meritorious." (*Clark* v. *White*, 12 Peters, 178, 200.)

It may become the highest duty (says this Honorable Court) of an insolvent to sell his property in order to pay his debts. (*Kinder* v. *Macy*, 7 Cal. 206.) The rule announced in words, so few and cogent, by the Supreme Court of the United States, is adopted, without limitation or qualification of any kind, by this Court in the case of *Dana* v. *Stanford et al.* (10 Cal. 269, 277), in which the correlative right of the creditor in this State: " A creditor violates no rule of law when he takes payment on security for his demand, though others are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims." Now, the plaintiff's instruction simply announced this principle of the law of debtor and creditor, and requested its application to the facts.

II. The next ground of error is extracted from the action of the Court, in having refused the plaintiff's third instruction, and in having granted the defendant's two instructions, all on the subject of the sufficiency of the delivery. The law, as given to the jury, was, that the established facts shown by the plaintiff, fell short of the delivery demanded by the statute; and that the property being cattle grazing on the plains, within certain ranges, a delivery could be legally made, in order to avail against the attaching creditor, in this single manner, viz.: by being collected together, picked out, and actually delivered by Wells to Walden, or his agent. This Court, in commenting upon the statutory rule of delivery in *Chapin* v. *Doub* (14 Cal.), say: " although delivery be requisite, in cases of sale, yet what will constitute a delivery, must depend, in some measure, upon the character of the article sold, and the peculiar circumstances of the case." It is respectfully urged that the doctrine adopted by the Court below, wholly ignored the nature of the property, and the attendant circumstances of its condition.

The Legislature has declared that contracts for property of this kind shall be evidenced by " a written descriptive bill of sale;" and this requirement, it is insisted, has not been imposed without a

reason or an object. (Wood's Dig. 542, Art. 2815.) The act is subsequent in date to that requiring immediate delivery from vendor to vendee, of things sold. It is to be presumed that the provision for the execution of a bill of sale, was enacted with an intelligent reference to the nature of the property, its ranging at large for grazing, and the but periodical actual possession for the purpose of actual delivery of its owners, the condition of the country, and the requirements of trade and barter, and with full knowledge also, of the then existing general act, demanding immediate delivery in all sales of personalty. Sales are made, as was this, out of the season of rodeos, and a large force must be employed, and much time occupied and heavy expense incurred to comply strictly with the rule of immediate delivery, if, as the Court below hold, there must be a gathering together of the cattle, a separation, and actual turning over into the manual custody. To do all this, rodeos must be had at various points, within the exterior lines of the range ; the owners of like property everywhere within the exterior boundaries of the range, and their cattle, must be put in motion, and, oftentimes, to the detriment of owners and property. Besides, the performance of this essential may be called for at a time and under circumstances, to wit: of season, condition of rivers, woods, and country generally, occupied by the cattle, as that performance may be either impossible, or so difficult and expensive, as to operate as an effectual suppression of contracts in this kind of property. If by immediate delivery is meant a delivery at the instant of time, or within the hour, or day, after the terms of sale are agreed upon, the rule as to property of this sort, in this State, will prove impracticable oftentimes, and " an actual and continued change of possession," if required to be so marked as, *per se*, to notify every one of the change, the conditions of performance will impose burdens on the buyer or else sacrifices, which must operate greatly in restraint of trade of which cattle are the subject. The article requiring a written descriptive bill of sale, was evidently intended to meet and to obviate these difficulties. It should receive a liberal construction, and be allowed a corresponding legal effect. It should be permitted to stand in lieu of the " immediate delivery " where at the time of the sale, the situation of the property renders immedi-

ate delivery impracticable, and where all the circumstances attend-
ing the transaction manifest a purpose on the part of the vendor to
transfer full possession and control to the vendee.

*H. P. Barber,* for Respondent.

The first point made by respondent is, that this Court has no
jurisdiction over the judgment, the appeal not having been taken
within one year from the entry thereof.   Sec. 336 of the Practice
Act provides, that an appeal from a judgment may be taken within
one year after rendition of judgment.   Sec. 333 says, a judgment
or order may be reviewed as prescribed by Title 9, and not other-
wise.   It is therefore plain that the judgment cannot be disturbed.

Let us now see if the order refusing a new trial can be reviewed
on appeal, where the judgment must stand, and if the whole case
does not rest on the judgment roll.   An order granting or refusing
a new trial is not a judgment.   (*Duane* v. *N. Y. R. R. Co.',* 4 How.
364.)   Where a party wishes to render an appeal from an order
refusing a new trial effectual, he must also appeal from the judg-
ment within statute time ; for of what avail can an order for a new
trial be, while the judgment stands against him unreversed and a
final estoppel ?   The Practice Act, Sec. 336, gives an appeal within
sixty days from an order refusing a new trial, and from any order
made after final judgment.   But by Sec. 338, the statement ex-
plaining the grounds of error in such order must be filed, or pre-
pared within twenty days after the entry of such order.   The same
reasoning will apply as to a statement filed before the order appealed
from, as to filing a bond on appeal, before filing the notice.   (*Des-
ling* v. *Moore,* 19 Cal. 81.)   Now, if the judgment be not appealed
from in time, the statement, so far as it can affect the judgment,
fails, or falls with the appeal, for want of jurisdiction.   Nor can
such statement, on motion for a new trial, be considered as appur-
tenant to the order refusing the motion ; for it is not filed after the
order, as required by statute, but before it.   If the statement on
motion for a new trial be used in this case as a statement on appeal,
the same objection applies.   It was filed June 14th, 1861, and the
order overruling a new trial was not made till June 10th, 1862 ;
so that the statement, instead of being filed twenty days after the

order, was filed nearly a year before. When the statement, as settled by the Judge, is used as a statement on appeal, it becomes a part of and wholly appurtenant to the judgment; it becomes, in fact, a part of the record, like a bill of exceptions; and the appeal from the judgment failing, the statement falls with it. Upon this point we submit these prepositions:

The appeal from a judgment, being taken after the expiration of one year, is a nullity.

If the appeal be considered as from an order refusing a new trial, the statement being filed before, instead of after the order appealed from, cannot, under Sec. 336 of the Practice Act, be considered as a statement on appeal from such order.

If it be considered as a statement on appeal from the judgment, the appeal from the judgment being a nullity, the statement is unavailable.

By Sec. 342, the statement, if from a final judgment, is to be annexed to the judgment roll (as in this case) ; if from an order, then to such order, or a copy thereof; but if the statement be on appeal from an order, it must be prepared after the entry of such order. Here, the record shows it was prepared and filed nearly a year before the order. In all cases either of judgments or orders, the statement on appeal must be prepared after the entry of such judgment or order, and can be referred as belonging solely to a judgment or order made antecedent to its filing or preparation.

As to the errors assigned by appellant. The first charge requested by him contains three errors. It requests the Court to charge, that if the jury shall find " that Wells was indebted to the plaintiff," etc. This is a case in which fraud was set up as a defense. The charge entirely omits the words " bona fide," or the question whether Wells was, bona fide, indebted to the plaintiff. Wells might very well have been indebted to plaintiff, and the indebtedness been perfectly good as between them, and yet fraudulent and void as against creditors. The least consideration for the notes would have been good as between Wells and plaintiff, but not so as against creditors. (Proyne's Case, 1 Smith's Lead. Cas. 1.) The third instruction requested by the plaintiff and refused was, that if a part of the cattle were within an inclosure, and delivered

Walden v. Murdock.

to the plaintiff, and the rest were remaining on their usual range, and not actually delivered (except by the bill of sale and transfer of the marking irons), that the actual delivery of the cattle in the in-. closure constituted a valid delivery of the whole, as against creditors. Wood's Digest, Art. 403, Sec. 15, provides, that the sale must be accompanied with " an immediate delivery and an actual and continued change of possession." The instruction assumes, that a mere verbal delivery of the cattle running at large, would be sufficient. We apprehend this is not law. The Court laid down the law correctly in its own charge, " that if it is within a reasonable possibility for the vendee to receive or get actual possession, it must be done to make the sale valid as against creditors." This we believe is the correct doctrine, and plaintiff's requested charge, that it was absolute law that a verbal or symbolical delivery of cattle running on a range was sufficient, was properly refused. The delivery of the bill of sale and branding irons, is by no means an " actual " delivery of the cattle ; and it was a question for the jury, under the circumstances of the case, as to whether there was any difficulty in the vendor making actual delivery, and whether he had made any endeavor so to do.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring specially.

The plaintiff sues to recover damages for the seizure and conversion of one hundred and seventy-five head of cattle, claimed by him. The defendant justifies under a writ of attachment in his hands, as Sheriff, issued at the suit of one Wilson against one Wells, the plaintiff's vendor. The cattle in controversy were part of a large lot bought by the plaintiff of Wells on the twenty-eighth day of November, 1860, in consideration of the plaintiff's note for two thousand dollars and a debt of eight hundred and thirty-six dollars, besides interest due from Wells to the plaintiff; and also a debt of six hundred and fifty dollars due one Crow, on which the plaintiff was surety. A bill of sale of the property was executed to the plaintiff on the twenty-ninth of November. The attachment had been issued at the time of this sale, but it was not levied on the property until the thirtieth of November. On the part of

the defendant, it was contended, that there was no delivery or continued change of possession in the sale to the plaintiff, as required by Sec. 15 of the Statute of Frauds; that it was therefore fraudulent and void as against the defendant, who was a creditor of the vendor.   The verdict and judgment in favor of the defendant was rendered June 14th, 1861, and an order overruling a motion for a new trial was made June 10th, 1862, and the notice of appeal from the judgment and order was filed August 4th, 1862—within sixty days from the date of the order overruling the motion for a new trial, but more than one year from the rendition of the judgment.

The respondent contends, that this Court has no jurisdiction of the appeal from the judgment, it not having been taken in time; and that this Court cannot take any action affecting the judgment, under the appeal from the order denying a new trial, for the same reason.   In the case of *Hanscom* v. *Tower* (17 Cal. 518), there was no appeal from the judgment, but only from the order refusing a new trial; and the Court in that case say, in answer to the same objection: " The appeal from the order refusing a new trial brings up the whole record; and there is nothing in the point that error cannot be assigned upon the judgment roll."   Under this appeal, this Court has a clear right, should it be satisfied that the Court erred in refusing a new trial, to reverse the order and grant a new trial, the effect of which is to vacate the judgment.   This objection is therefore overruled.

It is also contended, that the statement filed in the Court below, on the motion for a new trial, having been filed before the order appealed from, must be disregarded.   The rules relating to statements and bills of exceptions were fully laid down by this Court, in the case of *Towdy* v. *Ellis* (22 Cal. 650).   Under the principles as there announced, this objection is untenable.   So, in the case of *Loucks* v. *Edmondson* (18 Cal. 203), it was held, that on appeal from an order granting or refusing a new trial, there is no necessity for preparing a statement on appeal, the statement on motion for new trial being sufficient.

At the trial, the plaintiff asked the Court to give the following instruction, which was refused, and this is assigned as error : " If the jury shall believe from the evidence that Wells was indebted to

the plaintiff on the twenty-eighth of November last in the sum of two notes—the one from Wells to Walden for eight hundred and thirty-six dollars and interest, and the one from Wells as principal and Walden as surety to Crow for six hundred and fifty dollars and interest—in all some $1,800 or thereabouts—it was lawful for Wells to sell and Walden to buy all of Wells' cattle at a fair price and in payment of said debt, although the jury should further believe that said Wells was at the time in insolvent circumstances, and Walden knew it; and although such sale and transfer operated as a preference to said Walden over any other creditor or creditors, and although Walden may have known that other creditors would be thereby defeated of their debts." If the instruction had been limited to a statement that a *bona fide* sale of property by a debtor in insolvent circumstances to his creditor, in payment or satisfaction of his debts, is not fraudulent, merely because such creditor thereby obtains a preference over other creditors, and he may be aware at the time that it will have the effect of defeating the collection of other debts, it would have been proper, under the decisions of this Court. (*Dana* v. *Stanford*, 10 Cal. 277; *Kinder* v. *Macy*, 7 Id. 206.) But such sale must be *bona fide*, a point which is ignored in the instruction as asked; and it is therefore erroneous to that extent, and the Court did not err in refusing to give it in that form. Besides, the refusal did not injure the plaintiff, as the Court gave another instruction, embodying substantially the same principle relied upon in this instruction.

The important question involved in this case relates to the delivery of the cattle to the vendee. It seems that the sale from Wells to the plaintiff was of about five hundred head of cattle, about two hundred of which were at the time in a field of the vendor's; and the plaintiff, immediately on the day of sale, drove them over to his own ranch and put them in an inclosure of his own. There is no doubt as to the sufficiency of the delivery of this portion of the cattle. The remainder not thus driven from Wells' field to the plaintiff's were ranging upon open, uninclosed lands in the neighborhood, with the cattle of other persons, as far as twenty or twenty-five miles around. The vendor went out on the plains with the plaintiff and pointed out to him about fifteen to twenty head, which

the latter took possession of, and the vendor pointed out the range and told the vendee to take the whole; but no further act of delivery or taking possession seems to have occurred, except the execution of the bill of sale, in which the cattle are described as having the brand of the vendor, which is set forth therein. It was these cattle that were attached, and are now in controversy. On this point the Court, at the request of the defendant, gave the following instructions, which are now assigned as error: " That if, in the present case, the cattle alleged to have been sold by Wells to the plaintiff were susceptible of actual delivery, and could have been brought under the actual control or within the actual possession of the plaintiff, as by being collected or picked out and actually delivered to him or his agents, and this was not done, the sale was void as against the creditor, Wilson, and the defendant is entitled to a verdict. That the sale of cattle grazing on the plains within certain ranges, if they can be collected together and delivered, is not valid as against attaching creditors without such delivery; that if they can be collected and brought within the personal supervision and control of the party purchasing, a mere transfer by bill of sale, while they are running loose on the plains, is not good in law as against such attaching creditors."

This question as to what will constitute a valid delivery and a continued change of possession in a sale of stock ranging at large over the immense uninclosed plains in this State, is a most important one, deeply affecting the interests of those dealing in that kind of property. It not only affects the right of the vendee as against the claims of the creditors of the vendor, but also as against his subsequent vendees. The difficulties attending a delivery by securing to the vendee the actual control of such stock, often wild and hard to manage, are great; but if in addition to that he is required to keep them under his actual control, and not allow them to pasture upon their accustomed range, in order to establish a continued and exclusive possession, the difficulty becomes almost insurmountable. The difficulties growing out of the ownership by numerous parties, of vast herds of stock roaming over our extensive plains with their rapid increase, even in cases where there is no contest between adverse claimants to the same animals, are great, and the

Legislature, in order to prevent controversies, and to secure the evidence of ownership in a practicable mode best adapted to the circumstances of the country, has passed laws regulating the marking, branding, and counterbranding of stock, and requiring the owners to give rodeos at stated periods of the year, for the purpose of separating their stock, and marking and branding it so as to designate the owner.  (Wood's Dig. 542, 659.)  These laws are imperative in their character, and are required by the wants and necessities of the country.

Under the rodeo law, the owners of cattle in the county where the stock in controversy ranged, were required to give one general rodeo between the first of March and the thirty-first day of August of each year; and Sec. 9 of the act provides that " no person shall be allowed to mark or brand any portion or the whole of his cattle, at any other time or in any other manner than as prescribed in this act; and whoever shall act to the contrary will subject himself on conviction before any Justice of the Peace, to a penalty of not less than one hundred dollars nor more than five hundred dollars, at the discretion of the Justice."   It is clear, that if the plaintiff had collected together the cattle purchased by him, and marked them with his own mark and brand, and then let them go, to pasture on their accustomed range, that would have constituted a good delivery and continued change of possession.  But the third section of the law provides that " no owner of a stock farm shall be required to give a rodeo from the first day of November to the first day of March in each year, except on a contract for the delivery of cattle, or on a legal demand from the Sheriff or constable of his county, having an execution against the owner, and demanding a rodeo for the levy or delivery of cattle."  Sec. 1 of the same act, requires that four days' previous notice of such rodeos shall be given to all the owners of adjoining farms, in order that parties interested may meet for the purpose of separating their respective cattle.  Sec. 7 of the act respecting marks and brands provides, that " any person or persons selling cattle which are not intended for slaughter, or any horses, mares, mules, jacks, or jennies, shall be required to counterbrand them on the shoulders or give a written descriptive bill of sale, etc."

It is clear, that under the Statute of Frauds, the parties are

Walden *v.* Murdock.

entitled to a reasonable time in which to *complete* a delivery of personal property which had been commenced immediately after the sale, and under these statutory provisions the plaintiff was entitled to a reasonable time after the purchase to prepare for a rodeo, and to give the proper notices thereof, in order that he might separate the cattle purchased by him from the stock owned by others, and to properly mark and brand it; and in the meantime the rights acquired by his purchase will not be lost. As to what will constitute a reasonable time in such cases, will depend upon the facts and circumstances of each case. It is evident that he was not allowed any such reasonable time in the present case, as the Sheriff levied the attachment and proceeded to collect the cattle on the thirtieth of November, being the next day after the bill of sale was executed. The instructions given by the Court overlook and disregard entirely these important provisions of the statute regulating the delivery, as well as the necessity of giving the parties a reasonable time to complete the delivery, of cattle, and are in direct conflict therewith. The Court therefore erred in giving these instructions.

The appellant contends that the " written descriptive bill of sale," mentioned in the last section above referred to, is intended as a substitute for a delivery by actual transfer of the possession and control of the stock. It is evident that such is not the meaning of the statute. The law was designed to establish a rule by which the marks and brands of stock should be evidence of ownership; and upon a sale, where the lives of the animals were intended to be preserved, the vendor was required to put his counterbrand on the animals sold; and thus, while they would carry with them the evidence of his former ownership by his mark and brand, they would at the same time show a transfer by his counterbrand; but where it was not convenient to thus counterbrand, he was required, as a substitute, to give a " written descriptive bill of. sale," which would equally show what animals he had sold, and estop him from claiming title evidenced by his brand. The intention clearly is to prevent the vendor from subsequently claiming the cattle, because they carry his mark and brand, and not to dispense with the delivery required by the law to make the sale valid as against creditors and subsequent purchasers. It seems that at the time of executing the

36

bill of sale, Wells delivered his branding irons to the plaintiff—and this is relied on as a circumstance showing a delivery. Such a fact has no effect upon this question of delivery. It was good as a delivery of the branding irons, if they were included in the sale, but not as a delivery of any other property.

The judgment and order refusing a new trial is reversed, and the cause remanded for a new trial.

Norton, J. concurring specially.—I think the rodeo laws do not require a branding by the purchaser on a sale, but only a counter-branding by the seller, or a descriptive bill of sale. In this case, the latter mode was adopted, though the description by simply stating the brand was doubtless insufficient.

The parties, however, began an actual delivery before the levy by the Sheriff, and there was evidence of an intention to complete such delivery. A reasonable time to do it was allowed, and when done it would relate to the first part of the act certainly, and perhaps to the time of executing the bill of sale.

I therefore concur in the order reversing the judgment, and remanding the case for a new trial.