# GEORGE W. KELLER AND WILLIAM H. McCARTY, RESPONDENTS, v. DEWITT C. PAINE, APPELLANT.

*Fraudulent conveyance of a boat—when a diligent effort to take possession, is sufficient to preserve the rights of the transferee — damages for the conversion of a canal boat — opinions of witnesses as to its value at different ports — what offer the owner was willing to accept cannot be shown.*

March 24, 1881, between ten and eleven A. M., one Fink, at Selin's Grove, Pennsylvania, duly executed and delivered to the plaintiffs a conveyance, absolute in form, of a canal boat then lying in the canal at Ilion, in New York State. Between two and three o'clock of that day the plaintiffs delivered the bill of sale to one Spahr with instructions to go immediately to Ilion and take possession of the boat. Spahr left that afternoon by the first train, reached Ilion on March twenty-fifth, took possession of the boat and filed a copy of the conveyance in the town clerk's office at 4.20 P. M. The boat was conveyed to the plaintiffs to secure a pre-existing debt, and the conveyance was in fact a mortgage. About an hour and a-half before Spahr took possession of the boat the defendant, a sheriff, had levied upon it under an attachment issued on that day, in an action brought in the Supreme Court on the day before by a resident of Pennsylvania against Fink, to recover a debt due.

*Held*, that under the laws of the State of Pennsylvania, in accordance with the laws of which State it was agreed that the controversy should be determined, the plaintiffs having been as diligent in their efforts to take immediate possession of the boat as it was possible for them to be, were entitled to priority over the attaching creditor.

In an action to recover damages for the conversion of a canal boat, converted while lying in a canal at a port which was not a market for such boats, witnesses may be allowed to testify as to the value of the boat at various ports on the canals on which the boat is used.

Upon the trial of such an action the defendant offered to show what the person who owned the boat, prior to the giving of the bill of sale and the levy of the attachment, had offered to sell it for.

*Held*, that the evidence was properly excluded.

APPEAL from a judgment in favor of the plaintiffs, entered upon the report of a referee.

All the parties in interest are residents of the State of Pennsylvania, and the debts which they seek to enforce were contracted in that State by George P. Fink, a resident of that State. The defendant is the sheriff of Herkimer county and has been indemnified by the attaching creditors.

Keller, one of the plaintiffs, built a canal boat which is the sub-

ject of this action, and August 31, 1880, sold it to George P. Fink, at Selin's Grove, Pa., for $1,500, $550 of which was paid down and the remainder secured by Fink's judgment notes, on which judgment was duly entered in the Common Pleas of Snyder county, Pa., February 16, 1881, for $950 with interest from August 31, 1880. July 10, 1880, McCarty, the other plaintiff, was liable as surety for Fink in about the sum of $660, as security for which McCarty took from Fink his judgment note for $1,000, dated July 10, 1880. October 28, 1880, a judgment was entered on this note, in the Common Pleas of Snyder county, Pa., for $1,000 with interest from July 10, 1880. In May or June 1882 (after this suit was begun), McCarty paid the $660 to Fink's creditors.

Shortly after the sale of this boat Fink brought it into the State of New York and late in the autumn loaded it at Buffalo with a cargo of wheat to be delivered at New York. The boat reached Ilion on its way to New York and was there frozen in at the close of navigation in 1880. Fink remained with the boat until January, 1881, when he returned to Pennsylvania, leaving Daniel Boyer in charge of the boat.

March 24, 1881, Fink was indebted to Kerr Bros. & Co., of Philadelphia, Pa., for upwards of $2,000, for the recovery of which an action was begun on that day in the Supreme Court of this State; and March 25, 1881, an attachment was issued, and on the same day the defendant attached the boat, and May 9, 1881, sold it to Kerr Bros. & Co. for $600. July 15, 1881, Kerr Bros. & Co. entered judgment in this action for $2,171.22. The attachment and the proceedings thereunder were regular as against Fink.

March 24, 1881, between ten and eleven A. M., George P. Fink duly executed and delivered to the plaintiffs a conveyance of the boat, the conveyance being in form an absolute bill of sale, reciting a consideration of $1,650. Between two and three P. M. of March 24, 1881, the plaintiffs handed the conveyance to Samuel W. Spahr, with directions to go immediately to Ilion and take immediate possession of the property. Spahr left on the same afternoon by the first train and reached Ilion March 25, 1881, and took possession of the boat about an hour and a-half after defendant had levied his attachment, and at 4.20 P. M. filed a copy of the conveyance in the office of the clerk of the town in which the boat then lay.

Spahr continued in actual possession, living thereon, until the boat was sold by the sheriff, May 9, 1881, as hereinafter stated.

This action was brought to recover damages for the conversion of the boat. The defendant seeks to justify under his attachment. The issues were referred, and upon the decision of the referee a judgment was entered for the plaintiffs, from which the defendant appealed.

*Thomas Richardson*, for the appellant.

*Smith & Steele*, for the respondents

Follett, J. :

The good faith of the claims of these three creditors was not litigated upon the trial. The question litigated, aside from the question of damages, and upon which the decision was thought to turn, was, whether the conveyance was a bill of sale or a chattel mortgage. The appellant insists that the referee failed to determine, as matter of fact, from the conveyance and from the evidence *de hors* the conveyance, whether the transaction was a sale or a mortgage. This criticism is just and is vital, if the plaintiffs are not entitled to recover as mortgagees.

The referee finds (sixth finding) that the conveyance was made " to pay and secure these obligations." These obligations were precedent debts. In determining whether a conveyance taken in consideration of a precedent debt is a sale or a mortgage, the essential question is, was it taken in payment or as security? It is obvious that the referee has left this question undetermined.

If the conveyance is taken as security it is a mortgage or pledge, but if taken in payment, or part payment, thus extinguishing the debt in whole or in part, it is a sale; this is the rule in New York and Pennsylvania and other States. (*Todd* v. *Campbell*, 32 Penn. St., 250; *Robinson* v. *Cropsey*, 2 Edw. Ch., 138; *Clark* v. *Henry*, 2 Cow., 324; *Smith* v. *Beattie*, 31 N. Y., 542; *Hickox* v. *Lowe*, 10 Cal., 197; *Moore* v. *Murdock*, 26 id., 515; *Sutphen* v. *Cushman*, 35 Ill., 186; *Turner* v. *Kerr*, 44 Mo., 429; Jones' Chattel Mortgage, chap. 1 and cases cited; Jones' Pledges, § 15.)

The evidence in this case is insufficient to sustain a finding that the transaction was a sale. The consideration for the conveyance

was pre-existing debts. There is no evidence that the conveyance was taken in satisfaction of the debts, or any part of them. Keller testified "it was to secure the payment of these judgments that we took this bill of sale. We hold the bill of sale and judgments both against Mr. Fink. The judgments are not satisfied. I never paid anything for the bill of sale outside of what he owed me on the judgments.. If I should never recover the boat or its value, I should still hold the judgments against Fink. That is what I thought. I should have some paper — some good judgment notes. We bought the boat out and out, to secure the judgments; to get our pay."

McCarty, the other plaintiff, testified: "This judgment that I hold against Fink remains unsatisfied yet. The reason why I did not satisfy it when I got this bill of sale was because I hadn't got anything yet; I had got a bill of sale, although I had realized nothing on it, and I did not know it was required or I would have done it at any time; this bill of sale was for satisfying the judgment; as soon as I am paid what I paid for Fink I am willing to satisfy it at any time."

The judgment in this case must be sustained, if at all, on the theory that the conveyance is a mortgage, and that under it the plaintiff acquired a lien prior to the attachment. The rights of these parties are not affected by the question whether the conveyance is a sale or a mortgage, whether the plaintiffs are vendees or mortgagees. In Pennsylvania the presumption arising from the failure to immediately deliver, is the same under mortgages and under absolute sales. (*Jenkins* v. *Eichelberger*, 4 Watts, 121; *Clow* v. *Woods*, 5 S. & R., 275.)

This case is greatly simplified by the mutual assumption of the parties that it is to be determined by the law of Pennsylvania, relieving the court from determining whether there was an "immediate delivery" of the boat within the meaning of the fifth section of the statute of frauds, and within the second section of the act regulating liens on canal boats (chap. 412, Laws 1864), and in case there was not an immediate delivery, from determining what rights the defendant acquired under the proceedings *in rem.* by reason of the failure to comply with the statutes. It was competent for the parties to make this agreement. (Wharton's Conflict of Laws, § 369.)

The appellant expressly invokes in his brief the application of the laws of Pennsylvania to this case. On the trial it was stipulated that the statute of 13 Elizabeth (chap. 5) is in force in Pennsylvania, and no evidence was given of any statute of that State prescribing the mode of creating valid liens by chattel mortgages or by conditional sales, as against creditors. It cannot be presumed that the statutes of this State relating to this subject exist in Pennsylvania or that there are like statutes in that State. (*Leonard* v. *Columbia Steam Navigation Co.*, 84 N. Y., 48; *Wright* v. *Delafield*, 23 Barb., 498; reversed on other points, 25 N. Y., 266; Story's Conflict of Laws, § 637*a.*)

Chapter 5 (13 Elizabeth) was passed for the protection of creditors from fraudulent conveyances by debtors of lands or goods. Chapter 4 (27 Elizabeth) was passed for the protection of purchasers in good faith and for value, from the fraudulent conveyances of lands or interest in lands. (*Davis* v. *Bigler*, 62 Penn. St., 242, 247.) Subsequent purchasers of goods not being within either of these statutes it will not be profitable to examine the cases arising between purchasers unless they throw light upon what acts amount to a delivery.

It is unnecessary to enter into a general consideration of the way in which this statute has been construed and applied by the courts of England and States other than Pennsylvania. Those who are curious to do so may fully gratify their curiosity by the study of Twyne's case, and the notes thereto, in the last edition of Smith's Leading Cases.

It has been uniformly held in Pennsylvania, under chapter 5 of 13 Elizabeth, that when an opportunity to make an actual delivery has occurred, and the goods (being capable of manual delivery) are not actually delivered, they may be taken by an execution creditor of the vendor. Under such circumstances a failure to deliver is fraud in law, and the absolute good faith of the parties to the transfer is no protection to the vendee as against execution or attaching creditors As succintly stated in one of the leading cases upon this subject: "In such cases it is an inflexible rule of law that possession must accompany and follow the transfer, otherwise it is fraudulent in law." (*Clow* v. *Woods*, 5 S. & R., 275; *Babb* v. *Clemson*, 10 id., 419; *Streeper* v. *Eckart*, 2 Whart., 302; *Born* v. *Shaw*, 29 Penn. St., 288.)

*Clow* v. *Woods*, which Justice SHARSWOOD said, in *McKibbin* v. *Martin* (64 Penn. St., 356), "is the *Magna Charta* of our law upon this subject," distinctly recognizes the limitation contained in the foregoing proposition, in the following language: " But where, from the nature of the transaction, possession cannot be given, the parties ought, in lieu, to do everything in their power to secure the public from that deception which the possession of property, without the ownership always enables a person to practice. When a ship at sea is sold, the grand bill of sale is delivered, and that divests the vendor of his last badge of ownership ; and when goods are too bulky to admit of manual possession the key of the room is handed over. In every case where possession is not given the parties must leave nothing unperformed, within the compass of their power, to secure third persons from the consequences of the apparent ownership of the vendor."

In *Born* v. *Shaw* the exceptions to the general rule are stated in the following language : " When possession is retained by the vendor it is not only evidence of fraud, but fraud *per se*. There are some exceptional cases. When, from the nature of the transaction, possession either could not be delivered at all or at least without defeating fair and honest objects intended to be effected by, and which constituted the motive for entering into, the contract, the cause might be regarded as an exception to the rule. Where possession has been withheld from the vendee, pursuant to the terms of the agreement, some good reason for the arrangement, beyond the convenience of the parties, should appear."

In *McKibbin* v. *Martin* (64 Penn. St., 352), Justice SHARSWOOD said : " But it often happens that the subject of the sale is not reasonably capable of an actual delivery, and then a constructive delivery will be sufficient ; as in the case of a vessel at sea, of goods in a warehouse, of a kiln of bricks, of a pile of squared timber in the woods, of goods in the possession of factor or bailee, or a raft of lumber, of articles in the process of manufacture, where it would be not indeed impossible, but injurious and unusual to remove the property from where it happens to be at the time of the transfer. * * * In such cases it is only necessary that the vendee should assume the control of the subject, so as reasonably to indicate to all concerned the fact of the change of ownership. Where nothing of

the kind has taken place it is the duty of the court to pronounce a mere symbolical delivery to be insufficient; but where there is evidence of such assumption of control, it is for the jury to say whether it was *bona fide* or merely colorable, and whether it was enough to give notice to the world. The question in such case is, did the vendee do all that he might reasonably be expected to do in the case of a real and honest sale?" In *Barr* v. *Reitz* (53 Penn. St., 256) the rule is expressed in about the same language, and other illustrations given.

In *Cunningham* v. *Neville* (10 S. & R., 201) it is said: "There is nothing to distinguish this case from *Clow* v. *Woods*, except the circumstances of a symbolical delivery and a schedule of the articles assigned. The first is necessary only where peculiar circumstances preclude the possibility of actual possession; and then it is equivalent to actual possession, because the transaction is susceptible of no act of greater notoriety."

In *Wilt* v. *Franklin* (1 Binn., 502) Keeley assigned his property for the benefit of creditors. The assignee resided twenty-three miles from the place of the assignment and did not hear of it until four days afterwards. No delivery of the goods was made on the day of the assignment. Two days before the assignee heard of the assignment a creditor of Keeley levied an execution upon the goods. The assignee took possession of the goods soon after the assignment. The execution creditor contended that there having been no delivery prior to his levy he was entitled to the first lien, under 13 Elizabeth. It was held that the assignee's title was superior to the judgment creditor's, upon the ground that every necessary step had been taken to effect an actual delivery at the earliest practicable moment.

In *Metcalf* v. *Miller* (45 Penn. St., 441) a mortgage was executed by a tenant upon growing barley; before it was harvested it was taken on execution. In the meantime the tenant had left the farm and another tenant had gone into possession. It was held that the mortgagee, having done all that it was possible for him to do, was entitled to the barley.

In *Haynes* v. *Hunsicker* (26 Penn. St., 58) lumber piled at a sawmill was sold; the vendee marked the piles with his name, but the roads were in such condition that he could not move the lumber. It

was held that the vendee was entitled to priority, 'and said : " In every sale of personal property there must be such a delivery and change of possession attending the transfer as the nature of the property is capable of, followed by removal and actual possession, as soon as the bulk and condition of the thing and the circumstances of the case will reasonably permit." *Long* v. *Knapp* (54 Penn. St., 514) and *McMarlan* v. *English* (74 Penn. St., 296) were cases similar to *Haynes* v. *Hunsicker*, and like language was used by the court. *Crawford* v. *Davis* (99 Penn. St., 576), the latest Pennsylvania case on the subject to which our attention has been called, recognizes the authority of the cases above cited. Other cases decided by the courts of Pennsylvania might be cited, but they all state the rule and the exceptions in about the same language.

In *Gibson* v. *Stevens* (8 How. [U. S.], 384) pork and flour had been purchased by bills of sale from divers parties. The goods were stored in warehouses in Ohio, and the purchaser did not take actual possession. The purchaser assigned these bills as security for money advanced, but the assignee did not take actual possession and a creditor of the first purchaser attached the goods. It was held that the assignee of the bills was entitled to priority over the attaching creditor ; that the symbolical delivery was sufficient.

The Supreme Court of the United States holds that the failure of the vendee to take immediate possession under a conveyance absolute on its face is fraudulent as a matter of law. (*Hamilton* v. *Russel*, 1 Cranch, 309.) But in cases of conditional conveyances it is, at most, but evidence of fraud. (*Conard* v. *The Atlantic Ins. Co.*, 1 Pet., 388.)

By the statutes of California every transfer of personal property not accompanied by an immediate delivery, and followed by an actual and continued change of possession, is conclusively presumed to be fraudulent and void as against creditors. (1 Hittell's Code, § 8440.)

In *Walden* v. *Murdock* (23 Cal., 540) 300 cattle roaming at large on the plains, twenty and twenty-five miles in exent, were sold by a bill of sale. The vendor and vendee went on to the plains and the vendee took possession of fifteen or twenty head. The range was pointed out; nothing else was done. The next day a creditor attached. The cattle were not caught and branded until some

months afterwards. This was held, considering the nature of the property, a sufficient "immediate delivery" to satisfy the statute.

In *Meade* v. *Smith* (16 Conn., 346) a bill of sale was executed in the city of New York at 9.30 A. M., of property at Greenwich, Connecticut. The vendee reached Greenwich at 4 P. M. of the same day, but in the meantime, and about noon, the property had been attached by a creditor of the vendor. It was held that the vendee was entitled to the property. *Ingraham* v. *Wheeler* (6 Conn., 277) is a very similar case. In Connecticut, however, the failure to make an immediate delivery is but presumptive evidence of fraud.

In *Russell* v. *O'Brien* (127 Mass., 349) goods had been purchased, to arrive subject to inspection at the port of arrival. The purchaser held a bill of sale. On arrival, and before inspection, the purchaser sent a cartman for the goods, who failed to get them because they were not out of the hold of the vessel. The next day a creditor of the vendor attached the goods. The symbolical delivery was held good and the vendee entitled to the goods.

In Massachusetts the failure to make an immediate delivery is but presumptive evidence of fraud.

The cases cited are divisible into two classes: 1. Cases in which physical possession was not taken at the time of the sale or before the levy, but some slight dominion was exercised by the vendee over ponderous articles before the levy. 2. Cases in which physical possession was not taken at the time of the sale or before the levy, and in which the vendee exercised no dominion over ponderous articles before the levy, but exercised due diligence to take physical possession. The cases in the first class are not directly in point, but serve to illustrate the rule as to what acts amount to a delivery within the statute of 13 Elizabeth, as administered in Pennsylvania.

The cases in the second class seem to be in point and decisive of the case at bar. Within this class fall *Wilt* v. *Franklin, Gibson* v. *Stevens, Walden* v. *Murdock, Meade* v. *Smith, Ingraham* v. *Wheeler* and *Russell* v. *O'Brien* (*supra*). Under the facts thereinbefore stated it is clear, and the referee has so found, that the plaintiffs were as diligent in their efforts to take immediate possession as it was possible for them to be. Nothing more could have been done. The plaintiffs are entitled to priority over the attaching creditor.

A mortgagee in possession under a mortgage taken as security for a precedent debt, stands in the same position, as to a subsequent attaching creditor, as a mortgagee in possession under a mortgage taken as security for a consideration parted with at the date of the mortgage, and is entitled to the same priority.

Permitting Spahr to testify that he took possession of the boat was not error. He had described in detail his acts in taking and retaining possession of the boat, and this expression was used by the witness and received by the court, not for the purpose of proving the fact of taking possession, but as a general description of an act for the sake of brevity in passing and to avoid repeating at length the details of the act when necessary to refer to it. The remaining questions arise over the measure of damages fixed by the referee, and over the admission and rejection of evidence in respect to the measure of damages.

As a general rule the damages for the conversion of property is the market value at the time and place of conversion, but if the article has no market value at the time and place of conversion, then the market value at places reasonably near to the place of conversion where the article has a usable or salable value. In this case it was shown that Ilion was not a market for boats, and that boats, especially of this particular kind, had no market value at that place. The referee finds its value to be $1,400 in the waters of this State and Pennsylvania, which it was best adapted to navigate. No exception was taken to the referee's finding in this respect, or because the report did not specify the time or particular place at which the value of the boat was fixed. The only questions arising upon the question of damages are presented by the exceptions to the admission of evidence. All of the witnesses who testified upon the question of value were boat builders or captains of boats. All had seen the boat in question. This made all of them competent to express an opinion upon the value of boats. The defendant insists that Livingston, Hanaker, Burns, McCarty and Keller, not having seen the boat since the September previous, were, for this reason, unqualified to give their opinion.

This boat was new August 31, 1880, and had been used only during the fall of that year. There was no claim that it had been injured in any respect. Two witnesses at least testified that its natural wear

during that time would lessen its value only by about fifty dollars. Under the circumstances these witnesses were clearly qualified to give their opinion. (*Judson* v. *Easton*, 58 N. Y., 664.) All of the witnesses but Burns and Hanaker fixed the value at Ilion. Hanaker says that when the boat came back from the State of New York it was worth $1,500. Burns estimates its value at the place where built. The value of a boat is not necessarily fixed by what it will sell for at any particular port. Permitting witnesses to give their opinion of its value at various ports on the canals on which it is used, is not error. (*Wemple* v. *Stewart*, 22 Barb., 154; *Durst* v. *Burton*, 47 N. Y., 167, 175; *Harris* v. *Panama Railroad Co.*, 58 id., 660; *Rice* v. *Manley*, 66 id., 82.)

Nor was it error for the referee to refuse to allow the defendant to show what Fink had offered to sell the boat for. Fink was not a party in interest in the action, and had not been sworn. It has been intimated in some cases that offers are some evidence of value. But it is a class of evidence which it is much safer to reject than to receive. Its value depends upon too many circumstances. If evidence of offers is to be received it will be important to know whether the offer was made in good faith, by a man of good judgment, acquainted with the value of the article and of sufficient ability to pay; also whether the offer was cash, for credit, in exchange, and whether made with reference to the market value of the article, or to supply a particular need or to gratify a fancy. Private offers can be multiplied to any extent for the purposes of a cause, and the bad faith in which they were made would be difficult to prove. The reception of evidence of private offers to sell or purchase stands upon an entirely different footing from evidence of actual sales between individuals or by public auction, and also upon a different footing from bids made at auction sales. (*Young* v. *Atwood*, 5 Hun, 234.) The reception of this class of evidence would multiply the issues upon questions of damages to an extent not to be tolerated by courts aiming to practically administer justice between litigants.

The judgment is affirmed, with costs.

Hardin, P. J., and Vann, J., concurred.

Judgment affirmed.