Wemple v. Stewart.

WEMPLE and others, assignees of Gardinier and Van Denburgh, *vs.* STEWART and others.

A written contract, in the absence of fraud, can only be reformed, where it is shown by satisfactory proof that there is a plain mistake in the contract, by the accidental omission or insertion of a material stipulation, contrary to the intention of both parties, by expressing something different in substance from the truth of that intent, and under a mutual mistake.

To show that a written contract does not conform to the actual agreement made and intended to have been reduced to writing, the actual agreement should be stated, and the mistake in reducing it to writing alleged.

In an action for the non-delivery of goods agreed to be sold, if there is no evidence of their value at the place of delivery, evidence is admissible of their value at other places in the neighborhood of the place of delivery, and also at distant places where there is a market for the same articles, in connection with proof of the expense of transportation between such places and the place of delivery.

It is only where the evidence is clear and explicit, as to the value of the article at the place of delivery, that evidence of value at other places is inadmissible.

By a written agreement between the defendants and G. & V. the former sold and agreed to deliver to the latter 30,000 spruce plank "*sawed at our mill in S.*" *Held,* that the words "sawed at our mill," amounted to an affirmation by the defendants that that quantity had been sawed at their mill, and were then in their possession, owned by them. And that if the defendants had not on hand,

Wemple *v.* Stewart.

at the date of the contract, 30,000 plank, they were bound to saw a number equal to the deficiency, and deliver them according to their contract.

The defendants, in the same contract, also agreed to deliver to G. & V., in addition to the said 30,000 plank, all the merchantable plank, of the description and proportions therein mentioned, as they, the defendants, might saw at their mill the ensuing winter, to be delivered at the yard of G. & V. in F. the ensuing summer and winter, &c.  *Held,* that the defendants did not, by this clause, obligate themselves to saw any spruce plank at their mill.  That the obligation extended no further than to require them, in case they should elect to saw merchantable spruce plank at their mill, during the ensuing winter, to deliver all such plank, so sawed, at the yard of G. & V.

It was accordingly *held,* that it was erroneous to allow damages to the plaintiffs for the non-delivery of merchantable spruce plank of the description specified in the contract, not actually sawed at the mill of the defendants during the winter ensuing the date of the contract.

Where a party to a contract, after a breach by the other party has occurred, assigns his property to trustees, in trust for the benefit of creditors, the omission of the assignees to give notice to the other party, of the assignment, and to offer to fulfill the contract on the part of the assignor, will not discharge the other party from his obligation to fulfill the contract on his part.

THIS action was commenced in April, 1854, to recover damages for the non-performance of a contract made on the 20th of August, 1852, by the defendants, with Gardinier & Van Denburgh, in which the defendant sold and agreed to deliver to Gardinier & Van Denburgh, at their lumber yard in Fultonville, 30,000 merchantable spruce plank, sawed at their mill in Stratford, Fulton county, two-thirds at least of which to be 9 and ten inches wide, for which Gardinier & Van Denburgh were to pay the defendants on delivery, as follows : for all the ten inch plank, twelve cents each ; for all nine inch plank, eleven cents each ; and for the residue, one cent per inch in width ; said plank to be thirteen feet long and to include all merchantable plank, &c. and to be delivered during the then ensuing winter and spring.  The defendants, in this contract, also agreed to deliver to G. & V., in addition to the said 30,000 plank, all the merchantable plank of the description and proportions as above mentioned as they, the defendants, might saw at their mill the ensuing winter, to be delivered at the yard of G. & V. in Fultonville, the ensuing summer and winter of 1853 and 1854, at the respective prices above stated.  It

was provided in said agreement, that if any of the nine and ten inch plank then at the mill should lack or exceed a quarter of an inch in the width, a proportionate deduction or allowance should be made thereon, but that all plank thereafter to be sawed should be sawed $9\frac{1}{4}$ and $10\frac{1}{4}$ inches wide, so as when delivered, they should be nine and ten inches wide. The complaint alleged a neglect and refusal by the defendants to perform the contract. It also alleged an assignment by Gardinier & Van Denburgh to the plaintiffs, dated Sept. 14, 1853, of all their estate, &c. in trust for the creditors of the assignors.

The defendants, in their answer, among other allegations, alleged that it was the intention of the parties to the contract to sell and purchase the plank which the defendants then had at their mill, to the number of 30,000, if they had so many, and if not, then it was the intention of the defendants to sell, and of Gardinier & Van Denburgh to purchase, the plank they then had sawed at the mill, and no more. And the defendants insisted that such contract should be so construed, and should be reformed in accordance with such intention. This allegation was not denied in the reply of the plaintiffs.

The action came on for trial at the Montgomery circuit, held in February, 1854, and was referred by Judge Allen to Henry Adams, Esq. On the trial, before the referee, the defendants moved that the contract be reformed as claimed in the answer; which motion was denied by the referee. It was admitted on the trial that the defendants delivered to Gardinier & Van Denburgh 759 plank before the 1st of June, 1853, and 2723 plank in the months of June and July, 1854; and that $74 dollars was paid by G. & V. to the defendants before the 1st of June, 1853. The plaintiff proved by one McElwain the price of spruce plank in the spring of 1853, and up to June 1, at Fonda, being less than one mile from Fultonville. This witness had previously stated that he did not know the price of plank at Fultonville; nor whether there was a market there. He also testified that he did not know of plank being sold nearer to Fultonville than Fonda. This testimony was objected to; the defendants insisting that the plaintiffs could only prove

Wemple *v.* Stewart.

the price at Fultonville, the place of delivery. The plaintiffs proved how many plank the defendants could have sawed at their mill during the winter ensuing the date of the contract. This evidence was also objected to. Another witness for the plaintiffs testified that he resided in West Troy; was a dealer in lumber, and was acquainted with the price of lumber at West Troy; that Troy was a large lumber market; and he testified to the prices at Fonda, by deducting from the wholesale prices at Troy a fair sum for freight, commissions, &c. He also testified that he had never bought or sold lumber at Fonda or Fultonville. This testimony was also objected to. The plaintiffs proved that plank at Fultonville was worth half a cent a piece more than at Fonda. Another witness testified that there was no difference in price between Fultonville and Fonda. The plaintiffs also proved the price of plank at Albany, and the freight from Fultonville to Albany. This evidence was also objected to. The defendants offered to prove that at the date of the contract they had only 15,000 plank sawed at their mill. This evidence was rejected; the referee deciding that the defendants were bound, by the contract, to deliver 30,000 plank, whether they had that number sawed or not. The referee decided that the defendants were bound to deliver the plank, under the contract, after the assignment by Gardinier & Van Denburgh to the plaintiffs, without previous notice from the assignees that they would receive the plank and fulfill the contract on the part of Gardinier & Van Denburgh. The referee allowed the plaintiffs damages as well for the non-delivery by the defendants of the whole of the 30,000 plank stipulated to be delivered, by the first clause of the contract, as for the non-delivery of the plank which they *might* have sawed during the winter of 1852 and 1853, as stipulated in the second clause of the contract.

*H. & F. Fish*, for the plaintiffs.

*McMartin & Aikin*, for the defendants.

*By the Court,* PAIGE, J.   The defendants make the following points :  1. That the referee should have reformed the contract as claimed in the answer of the defendants ;  2. That the referee erred  in receiving  evidence  of  the  price  of  plank  at  any other  place  than  the  place  of  delivery ;  3. That the terms of the contract the defendants were not  bound  to  saw and de-liver any more plank  than  they pleased,  during  the winter en-suing  the  date  of  the  contract ;  4. That  the  terms  of  the  con-tract only required  the  defendants  to  deliver  the  plank  which had been previously sawed at their mill and was at such mill at the date of the contract ;  5. That the defendants were not bound to deliver any plank to the assignees of Gardinier & Van Den-burgh without notice of the assignment, and an offer on the part of the assignees to fulfill the contract ;  6. That  the  damages al-lowed by the referee were more than the  evidence and the con-tract warranted.

The statements in the  answer  show  no  right  to demand a reformation of the contract, by conforming it to the alleged in-tention of the parties.   A written contract, in the  absence of fraud, can only be reformed, where it is shown by satisfactory proof that there is a plain mistake in the  contract, by the acci-dental omission or insertion of a material stipulation, contrary to the intention of both parties, by expressing something differ-ent in substance from the truth of that intent, and under a mutual mistake.   (1 *Story's Eq. Jur. sec.* 152, 155, 156, 157. 2 *John.  Ch.* 595, 596.)   The answer, in setting up the mistake in  the  written  contract, should  have  stated  that  the  parties agreed to sell and purchase only the plank which the defendants then had at their mill, and then should have alleged that in re-ducing the contract to writing this limitation of the quantity sold and purchased was accidentally omitted, contrary to the intention of the parties :  merely alleging that the parties in-tended to sell and  purchase  the  plank  then  at  the  mill  of  the defendants, is not sufficient to entitle the defendants to a re-formation of the contract in accordance with that intention.   To show that a written contract does not conform to the actual agreement made and intended to have been reduced to writing,

the actual agreement should be stated, and the mistake in re-
ducing it to writing alleged. (3 *How. Pr. Rep.* 358.) I am
inclined to believe that if the mistake in the written contract,
and the claim to have it reformed, had been properly stated, it
would have been a counter claim within the meaning of the first
sub. of sec. 150 of the code. A counter claim is there defined to
be, " A cause of action arising out of the contract or transaction
set forth in the complaint as the foundation of the plaintiff's
claim, or connected with the subject of the action." The coun-
ter claim attempted to be set up by the defendants is a cause
of action arising out of the contract set forth in the complaint
as the foundation of the plaintiffs' claim, and is connected with
the subject of the action. (*Voorhies' Code,* 208, 209, *4th ed.*)
If the counter claim had been properly set up, a reply would
have been necessary. (*Code, sec.* 168. 3 *How.* 358.)

The evidence in relation to the price of spruce plank at Fonda,
Troy and Albany, was properly received. There was no evi-
dence of the value of the plank at Fultonville, the place of
delivery ; at least, none had been introduced at the time the evi-
dence as to its value at the other places was received. Where
there is no evidence of the value of the goods at the place of
delivery, evidence is admissible of their value at other places in
the neighborhood of the place of delivery, and also at distant
places where there is a market for the same articles, in con-
nection with proof of the expense of transportation between such
places and the place of delivery. (5 *Denio,* 56. 8 *Wend.* 435.
7 *Barb.* 18.) It is only where the evidence is clear and ex-
plicit as to the value of the article at the place of delivery, that
evidence of value at other places is inadmissible. (8 *Wend.* 436.)

I think the construction put upon the first clause of the con-
tract, by the referee, was correct. By its terms the defendants
sold and agreed to deliver to Gardinier & Van Denburgh 30,000
merchantable spruce plank. The words " sawed at our mill "
amount to an affirmation by the defendants that that quantity
had been sawed at their mill, and were then in their possession,
owned by them. The agreement of the defendants to sell and
deliver 30,000 plank assumes that they have sawed that number

Wemple *v.* Stewart.

of plank and have them on hand, and that they have it in their power to deliver them according to the agreement. If the words "sawed at our mill" should be construed to refer to plank thereafter to be sawed, they would create an obligation on the defendants to saw the quantity stipulated, and to deliver them, as provided in the contract. This construction is confirmed by the second clause of the contract, in which the defendants agree to deliver to Gardinier & Van Denburgh, "*in addition to the above* 30,000, all the merchantable plank, &c. that we may saw," &c. Here they again assume, and impliedly assert, that they are obligated by the first clause of the contract to deliver to Gardinier & Van Denburgh 30,000 plank. If then the defendants had not on hand, at the date of the contract, 30,000 plank, they were bound to saw a number equal to the deficiency, and deliver them according to their contract.

But I think that the referee erred in his construction of the second clause of the contract. It seems to me that by that clause the defendants did not obligate themselves to saw at their mill any spruce plank. The obligation extended no further than *to* require them, in case they elected to saw merchantable spruce plank at their mill during the ensuing winter, to deliver all such plank so sawed, at the yard of Gardinier & Van Denburgh. The agreement is to deliver all the merchantable spruce plank *that they may saw*, &c. These words are not promissory in their nature, except so far as relates to the delivery of plank which they shall saw during the ensuing winter; nor do they import a promise or undertaking to saw any particular, or any, quantity of merchantable spruce plank during the ensuing winter. To construe this clause of the contract as requiring the defendants to saw all the plank they should be able to saw the next winter, &c. would be making a new contract for the parties.

If this construction of the second clause of the contract is correct, the referee erred in allowing damages to the plaintiffs for the non-delivery of merchantable spruce plank of the description specified in the contract, not actually sawed at the mill of the defendants during the winter ensuing the date of

the contract. The breach of the first clause of the contract was complete before the assignment of Gardinier & Van Denburgh to the plaintiffs. The 30,000 plank were, by the contract, to be delivered during the winter of 1852 and 1853 and the spring of 1853; and the assignment was not executed until the 14th of September, 1853. But if the assignment had been delivered before the breach was complete, the omission of the assignees to give notice of the assignment and to offer to fulfill the contract on the part of Gardinier & Van Denburgh, did not discharge the defendants from their obligation to fulfill the contract, on their part.

The judgment entered upon the report of the referee must be reversed, and his report set aside, and the action must be referred back to him to be retried.

[CLINTON GENERAL TERM, May 6, 1856. *C. L. Allen, James, Rosekrans* and *Paige,* Justices.]