# Wheeling.

## ALLEN v. YEATER.

### Decided November 20, 1880.

1880
Special Term.

Allen
v.
Yeater.

1. Equity relieves against a material mistake of facts, as well as against fraud, in a deed or contract in writing.

2. Parol evidence is admissible to prove such mistake, though it is denied in the answer.

3. The evidence to show such mistake in a written instrument must be clear and strong, so as to establish the mistake to the entire satisfaction of the court.

4. A covenant in a deed must be construed most strongly against the grantor.

5. Warranties of title in conveyances are either "general" or "special." If the grantor would limit his liability, he must insert a covenant of "special warranty." If he does not do so, but conveys with "warranty," the covenant must be regarded as a "general warranty."

Appeal from and *supersedeas* to a decree of the circuit court of the county of Doddridge, rendered on the 21st day of May, 1877, in a cause in said court then pending, wherein Israel B. Allen was plaintiff, and Jacob Yeater was defendant, allowed upon the petition of said Yeater.

Hon. C. S. Lewis, late judge of the second judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case:

The plaintiff, Allen, filed his bill in May, 1871, in the circuit court of Doddridge county, to correct a mistake

in a deed from himself to the defendant, Yeater, and to enforce his lien against the tract of land so conveyed for the residue of the purchase-money. He alleged in his bill among other things, that the land amounting to about one hundred and ninety-five acres was conveyed to him by his father, in which deed was an express reservation of a "storehouse and lot;" that by the mutual mistake of himself and his grantee, Yeater, the said "storehouse and lot" were not reserved in the sale and conveyance to Yeater. He prays that the mistake be corrected, and a decree be rendered him for the balance of his purchase-money, and that the land may be sold to pay the same, &c.

1880
Special Term.

Allen
v.
Yeater.

Yeater promptly filed his answer, in which he denies the mistake, and insists, that he bought and intended to buy, and that Allen sold, and intended to sell him, the said "storehouse and lot." He says, that "at the time he made the purchase of said land, and for several years before, the widow and heirs of Jesse J. Allen were living in the storehouse mentioned in complainant's bill, but respondent did not know that he owned or claimed it; nor did complainant say one word to respondent about said storehouse and ground on which it stood, or anything about or in reference to it, either before the purchase or at the time of completing his contract and executing his title-bond as aforesaid; nor did he ever mention a word to respondent in reference to said storehouse and lot of ground, until after he had paid complainant the $1,500.00 payment."

Respondent further says, that "complainant, when he made the said contract with respondent, spoke of and took pains to reserve an acre of ground, where the family burying ground was, and also some rye that was growing on said land, and was particular to specify the same in said title-bond, but never once mentioned said storehouse and lot; and respondent would long since have paid him up the whole of the purchase-money, if he could or would have complied honestly with said con-

1880
Special Term.

Allen
v
Yeater.

tract." Respondent charges that the deed to him was not executed. according to the contract, as the contract provides for a " deed of general warranty," and the deed executed to him contained a covenant of "warranty" only, and prays that the deed may be corrected by the plaintiff.

Many depositions were taken and read in the cause; and on the 21st day of May, 1877, the court entered a decree in the cause, correcting the mistake set out in the bill, and providing for the enforcement of the lien for the residue of the purchase-money, giving costs against the defendant and omitting to require the deed to be corrected in the covenant of warranty.

From this decree an appeal was granted, also *supersedeas* to the same. Such portions of the depositions as are deemed material to the deision of the cause will be referred to in the opinion.

*P. Gano,* for appellant, relied upon the following authorities:

2 Story Cont. §§ 727, 728; 2 Parsons Cont. 656; Smith Eq. 255, § 16; 2 Story Eq. §§ 770a., 779; 4 Rand. 355; 14 Johns. 32; Smith Eq. 229, 230 and cases cited; *Id.* 255; Code, ch. 72, §§ 13, 15; 6 Call 335; *Id.* 187; *Id.* 204; *Id.* 368; 1 Rand. 408; 6 Pet. 389.

*W. L. Cole and J. Dallas Ewing,* for appellee.

· JOHNSON, JUDGE, delivered the opinion of the Court:

It appears from the record, that at the time the decree complained of was rendered, all the lands, which the grantee claimed to have purchased, had been conveyed to him, and as to the storehouse and lot, the court held that it was included in the deed by mistake of both parties, and corrected the mistake. It is insisted by the appellant's counsel, that parol evidence was inadmissible to show that there was any mistake in the written con-

Syllabus 1.

tract. The law on the subject is well settled. Equity

relieves against a material *mistake* of fact, as well as against fraud, in a deed or contract in writing. Parol evidence is admissible to prove such mistake, though it is denied in the answer. The evidence to show such mistake in a written instrument must be clear and strong, so as to establish the mistake to the entire satisfaction of the court. *Gillespie et ux* v. *Moon*, 2 Johns. Chy. 585; *Keisselbrack* v. *Livingston*, 4 Johns. Chy. 144; *Nevins* v. *Dunlap*, 33 N. Y. 676; *Wemple* v. *Stewart*, 22 Barb. 154; *Ruffner* v. *McConnell*, 17 Ill. 212; *Western Mining and Manufacturing Company* v. *Peytona Cannel Coal Company*, 8 W. Va. 407.

1880<br>Special Term.<br>—————<br>Allen<br>v.<br>Yeater.<br><br>Syllabus 2.<br><br>Syllabus 3.

In *Wemple* v. *Stewart, supra,* it was held, that "a written contract in the absence of fraud can only be reformed, where it is shown by satisfactory proof, that there is a plain mistake in the contract by the accidental omission or insertion of a material stipulation contrary to the intention of both parties by expressing something different in substance from the truth of that intent and under a mutual mistake."

In *Ruffner* v. *McConnell, supra,* it was held: "We recognize mistake in fact as a ground for equitable jurisdiction, but relief will only be granted upon clear and satisfactory proof of the mistake in fact. * * * But this does not extend to mistakes in the law of the contract, or legal meaning of the terms agreed on between the parties, without fraud, * * * nor to mistakes in the intention of one only of the parties, and without fraud in the other."

The pleadings are certainly proper in this cause, in order to present the question, whether there was a mutual mistake committed in the written contract and deed-by including the storehouse and lot. Does the evidence clearly and definitely establish such mistake?

The evidence relied on is of two kinds: First, the circumstances of the case, and secondly, the admissions of the defendant. Before the purchase by the defendant he knew that the store-house and lot was owned by Jesse

J. Allen. He made the coffin for Allen in March, 1865, and at that time in a conversation with Solomon Frum referred to Allen's circumstances and to his having owned the "storehouse and lot." The same conversation is detailed by Charles Lyons. In a conversation had with another witness, S. J. Allen after referring to the administrator on Jesse J. Allen's estate said : " It might be possible, that by selling the house and lot, they (his heirs) might be able to save the land over the creek." The witness said : " There was a difference of opinion, whether Jesse J. Allen had a deed for the house and lot." He then stated : " He knew he had, for he had seen and read it, as good a deed as any man could write ; that C. J. Stuart wrote it." Yeater was therefore in possession of the fact, that Jesse J. Allen owned the storehouse and lot at the time of his death ; and the deed to Israel B. Allen, the grantor of Yeater, had been on record since the 26th day of February, 1853, and that deed *expressly reserved* the storehouse and lot. The defendant, Yeater, admits in his answer, that at the time he bought the property and for several years before, " the widow and heirs of Jesse J. Allen were living in the storehouse." It is not pretended that Allen ever put Yeater in possession of the storehouse. To a number of witnesses he admitted, he had not bought the storehouse and lot ; and it must be remembered, that these declarations are against his interest and are not only competent, but strong testimony throwing light upon the question of the mistake being made, as charged in the bill, and denied in the answer.

George Prunty says, that Yeater told him " he had given or would give $3,000.00, but that he would not give any more, except the house and lot belonged to the farm." The witness says, he will not be positive whether Yeater had bought, or was about to buy ; but says there was a rumor that one of the Frums was about to purchase the farm from Allen, and that Yeater had understood Frum was to give $3,500.00

for the farm. It is highly probable, therefore, that this conversation took place before the purchase by Yeater. To Isaac Ice, Yeater stated that he had bought the farm with the exception of the grave-yard lot and a house and lot; that the grave-yard was excepted in "the deed or bond," but the house and lot was not excepted in the bond. At another time he told the same witness, that "if Anna Allen, widow of Jesse J. Allen, would sell the house he would buy it; he would pay more for it than it was worth." He said that "some one might buy it and put up a doggery upon it; and that he did not want any one who might live on his farm to be annoyed by it." And in still another conversation with the same witness, Ice, he said: "The widow Allen only owned forty feet of ground. He had made a calculation and found nine feet one way and five feet the other, and he intended to notify her, that the house stood on more ground than she owned; and if she did not take it off, he would cut it loose to get it off."

James Morgan testifies that he heard a man say to Yeater: "You have purchased the Bee farm," and Yeater said, "If that shanty, shell or hull was out of there I would not care." To the question, what Yeater meant by the shanty, &c., witness answered: "He meant the house—the Jesse J. Allen house."

This positive evidence with all the circumstances surrounding the parties convinces me beyond any doubt that Yeater did not believe he was buying the storehouse and lot, and that Allen did not intend to sell it, and its being included in the description of the property sold was a mutual mistake by the parties; a mistake that a court of equity should relieve against, and it was by the circuit court properly corrected.

The only other question to be determined is: Should the deed have been on the prayer of the defendant reformed as to the covenant of warranty? The bond provided for a "general warranty" and the deed contains a covenant of "warranty."

1880
Special Term.

Allen
v.
Yeater.

Syllabus 4.

Syllabus 5.

A covenant in a deed must be construed most strongly against the grantor. Warranties of title in a conveyance are either "general" or "special." If the grantor would limit his liability he must insert a covenant of "special warranty." If he does not do so, but conveys with "warranty," as in the case at bar, the covenant must be regarded as a "general warranty."

For the foregoing reasons the decree of the circuit court of Doddridge county, entered in this cause on the 21st day of May, 1877, is affirmed with costs and damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.