## WIGAND v. BACHMAN-BECHTEL BREWING CO.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

1. SALES ☞71—CONTRACT—CONSTRUCTION—BY-PRODUCT OF BREWERY.

A contract binding a company operating a brewery to sell to a person, who installed at considerable expense a drying plant, all wet grains "produced from the brewing * * * and to continue so to do for a period of five years, * * * or until 500,000 barrels of beer shall have been brewed," if it obligated the brewery company to operate the brewery plant during the 5-year period, required it merely to furnish the wet grain product thereof up to the product of 500,000 barrels, if it brewed that amount in that period, and did not obligate it to furnish 500,000 barrels if, though operating the full period, it would have brewed a less amount.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 189–196; Dec. Dig. ☞71.]

2. APPEAL AND ERROR ☞1064—PREJUDICIAL ERROR—BREACH OF SALE CONTRACT.

In the buyer's action for a breach of such contract, an instruction that defendant agreed to furnish plaintiff during the five-year period, the wet grains from the brewing of 500,000 barrels of beer, was prejudicial to defendant, regardless of whether defendant was required to operate during the entire period, where it appeared that the wet grain product of the brewery, estimated on the basis of the product during the portion

of the 5-year period during which it operated, would have comprised the product of only 451,400 barrels of beer during the 5-year period.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221-4224; Dec. Dig. ☞1064.]

3. SALES ☞84—CONTRACT—CONSTRUCTION—BY-PRODUCT OF BREWERY.

Such contract obligated defendant to furnish plaintiff the wet grain product of its brewery plant only so long as it should, within the 5-year period, continue to operate its plant, though plaintiff had bound himself to expend and did expend a large sum of money in installing his drying plant, and did not obligate it to continue to operate its plant and furnish such product during the entire 5-year period.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 234, 235; Dec. Dig. ☞84.]

Appeal from Trial Term, Richmond County.

Action by Charles F. Wigand against the Bachman-Bechtel Brewing Company. From judgment for plaintiff, and denial of new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before JENKS, P. J., and THOMAS, MILLS, RICH, and PUTNAM, JJ.

William S. Gordon, of New York City, for the appellant.
Thomas G. Prioleau, of New York City, for the respondent

MILLS, J. The action was brought to recover damages for the alleged breach by the defendant of a written contract between the parties, a copy of which is annexed to the complaint. At and before the making of the contract, the defendant was operating a brewery in Richmond county, which brewery produced, as a by-product, wet grains, usually waste, which, after being dried, may be sold for the purpose of feeding cattle. The plaintiff for several years had been engaged in the business of installing plants for drying such grains.

The contract provided: (a) That the plaintiff would, at his cost, install such a drying plant in one of the defendant's buildings, and advance to the defendant $5,000, or so much thereof as might be necessary, to make any needed alterations in such building to fit it for plaintiff's such plant, and to have the drying plant ready for use by June 1, 1910; (b) that the defendant shall sell to the plaintiff all the wet grains "produced from the brewing at its brewery, and to continue so to do for a period of five (5) years from the 1st day of June, 1910, or until five hundred thousand (500,000) barrels of beer shall have been brewed" by the defendant, and shall furnish to the plaintiff heat for such drying plant; (c) that the plaintiff shall pay to the defendant 6 cents per barrel for each barrel of beer so brewed; and that the sum of $250 a month is to be deducted by the plaintiff towards the repayment of the amount advanced by him to pay the expenses of altering the defendant's said building; (d) that at the end of the 5-year period the title to the drying plant shall vest in the defendant; and (e) that, should the defendant be prevented "from operating its brewery by reason of strikes, breakdowns in machinery, or for any reason, whether beyond its control or otherwise, then and in that event this contract and the performance thereof by the party of the first part [namely, the de-

fendant] shall stand in abeyance until the brewery of the party of the first part shall again be in operation."

Plaintiff did install the drying plant by the 1st of August, 1910, at a cost to him of $6,050. From about that date until May 1, 1912, a period of 1¾ years, the defendant operated its brewery plant and furnished to the plaintiff all its product of wet grains, and he dried them in his plant and sold them, making payment therefor as provided in the contract. Thus the contract was performed by both parties for that period of 1¾ years. About May 1, 1912, the defendant sold its business to a third party, and, as a part of the sale, entered into an agreement with that party whereby it agreed not to operate its brewery for a term of 2 years, and the plaintiff was forthwith notified by defendant that its plant would be so closed, and its operation has never been renewed. In the 1¾ years of the operation as aforesaid, the plaintiff received from the defendant the wet grain product of about 158,000 barrels of beer.

Evidence was introduced in behalf of the plaintiff showing the profit which he had made upon the grains which he did receive, and also the profit which he would have made upon the balance of the such wet grain product of the full 500,000 barrels of beer, and also that he could not elsewhere purchase the wet grains; and evidence in behalf of the defendant was introduced to show that such wet grains could elsewhere be purchased. The plaintiff figured out his loss of profits upon the basis that he was entitled to the wet grain product of the full 500,000 barrels, and made such loss of profits upon that basis to be the sum of $12,964.50. The verdict allowed him $8,500.

[1, 2] The main question presented here for determination is whether or not, by the contract, the defendant agreed to furnish the plaintiff, during the 5-year term thereof, the wet grains from the brewing of 500,000 barrels of beer. The trial court expressly charged the jury in the affirmative upon this question, the defendant excepting, and the verdict must be regarded as having been reached upon that basis.

I think that in any event this charge was erroneous—at least in so far as it instructed the jury that the defendant, by the contract, became obligated to furnish the plaintiff, during the 5-year period, with the wet grain product of at least 500,000 barrels of beer to be brewed by it. Upon the construction of the contract most favorable to the plaintiff according to his contention, it seems to me that it obligated the defendant to continue to operate its brewery plant during the five-year period and to furnish to the plaintiff the wet grain product thereof up to such product of 500,000 barrels, if it brewed that amount in that period. I perceive no warrant for either rejecting the word "or" in the phrase "for a period of five (5) years from the 1st day of June, 1910, or until five hundred thousand (500,000) barrels of beer shall have been brewed by the party of the first part," or for reading such word as "and." This error was substantial, because the later submission to the jury of the question of damages was made upon the basis of that construction of the contract; and if the other construction were proper, namely, that the contract bound the defendant to furnish only the said product of what it might brew during that period, not exceed-

ing the 500,000 barrels, then the product of the 158,000 barrels, which had been furnished by defendant to plaintiff during the 1¾ years of actual operation of the defendant's plant in that part of the contract term, would indicate that at the same rate during the 5 years the plaintiff would receive from the defendant such wet grain product of only about 451,400 barrels of beer. I reach this conclusion in this way: In 1¾ years operation of defendant's brewery, plaintiff received the product of 158,000 barrels, and at the rate of 500,000 in 5 years he would have received 175,000 in the 1¾ years leaving him a shortage of 17,000 barrels in that time, or of 2,430 in each quarter of a year, making 9,720 in a year, or 48,600 in the entire 5 years.

[3] This error would seem to necessitate a reversal; but, for the disposition of the case, it seems important to determine the main question in controversy between the parties here, and that is this: Did the contract obligate the defendant to continue to operate is plant and to produce and furnish to the plaintiff its product of wet grains, or only to furnish such product to the plaintiff so long as the defendant should, within the contract period, continue to operate its plant? The charge asserted distinctly the affirmative of the first branch of this question, the defendant excepting.

The briefs of the respective learned counsel abound in their own arguments and views upon this question, but are utterly devoid of citation of any authority thereon. The appeal was argued here on the 2d of June last, and on the 8th of that month the appellant's counsel wrote a letter to the Presiding Justice, calling the attention of the court to the case of Pfann & Co. v. Turner Cypress Lumber Co., 194 Fed. 69, 114 C. C. A. 89, as being an authority directly in point in support of his main contention upon this question; and on the 9th of that month the respondent's counsel also wrote a letter to the Presiding Justice, in which he undertook to discriminate between that case and the one here upon appeal, and both letters were by the Presiding Justice transmitted to me.

An examination of the Pfann Case, supra, which was decided by the United States Circuit Court of Appeals in the Fifth Circuit, and of the New York case of Wemple v. Stewart, 22 Barb. 154, cited in the opinion in the Pfann Case, has convinced me that each case is directly in point here and sustains fully the appellant's contention that the contract here did not obligate it to continue in its brewing business for any length of time. In the Pfann Case, supra, the contract, therein designated as an agreement, provided that the defendant agreed to sell and the plaintiff to buy all of the lumber of the grades and kinds already manufactured by the defendant, "and also such further lumber as may be manufactured by them" from November 1, 1901, to November 1, 1903 (194 Fed. 71, 114 C. C. A. 89); and in the Wemple Case, supra, the contract provided that the defendant should deliver to the plaintiff all the merchantable spruce plank which they may saw the ensuing winter (22 Barb. 155). In each case, at the time of the making of the contract, the defendant was operating a going lumber producing plant, and, indeed, each contract provided also for

the sale to the plaintiff and purchase by it or him, from the defendant, of a quantity of lumber already sawed.

In the Pfann Case, supra, the opinion says:

"It is contended by the lumber company [the plaintiff purchaser] that the words employed required Pfann & Co. to operate their plant for the period of two years, and upon their failure to do so a cause of action accrued to it for breach of contract. On the other hand, Pfann & Co. insist that they did not contract away their right to sell the plant, and that they were obligated to deliver such lumber only as might be manufactured by them while the mill was in operation. We think that the latter construction is the proper one to place upon the contract. The words do not import a promise to keep the mill in operation, nor to manufacture any quantity of lumber during the two years. Lumber manufactured by the mill of the grades in the contract specified it was the duty of Pfann & Co. to sell and deliver to the lumber company at the contract price. But the words referred to cannot, by any reasonable rule of interpretation, be so construed as to divest Pfann & Co. of the right to dispose of their property in their own way and at any time deemed advantageous to themselves."

In the Wemple Case, supra, the opinion was to like effect.

It is true that in the case here on this appeal the plaintiff bound himself to expend and did expend a large sum of money in installing his drying plant; but I do not think that that fact can justify us in implying into the contract an obligation on the part of the defendant not to sell out its business. The wet grain was merely a by-product of defendant's plant; and it seems at least equally unreasonable that for the mere disposition of such by-product the defendant would have obligated itself to continue its business for the definite period of 5 years.

The respondent's counsel, in his letter, in endeavoring to discriminate the case here from that in the Pfann and Wemple Cases, supra, makes much of the fact that in those cases the word "may"—i. e., "as *may* be manufactured"—was used in the contract, whereas that exact word "may" is not used in the contract herein. I note, however, that the ninth clause of this contract, as to selling to the plaintiff of the grains dried by the defendant after the 5-year period, uses that very word "may," viz., "which the said party of the first part *may* dry at its brewery"; and I think that the same meaning is involved in the words "produced from the brewing at its brewery" in the provision as to the 5-year period.

As this conclusion seems likely to lead to the final disposition of the case, I do not consider the question of the measure of damages—that is, whether the trial court erred in permitting a recovery upon the basis of the loss of profits, or the question whether or not the eighth clause of the contract, by itself, authorized the defendant at any time to end its obligation to plaintiff by selling its business to another, although I am inclined to agree with the negative view, upon the latter point, expressed by the learned trial justice in his opinion.

It is much to be regretted that the trial justice did not have his attention called to the two cases which, as above indicated, I have deemed conclusive upon the main question involved. I may add that at the argument I was impressed with the view that the contract did, by fair and reasonable implication, bind the defendant to continue its brewing business for the full period of 5 years, or until the maximum of 500,-

000 barrels of beer had been brewed, and very likely would, even upon more mature reflection, have entertained the same view, except for the two authorities subsequently cited as above stated.

I advise, therefore, that the judgment and order be reversed, with costs, and the complaint be dismissed, with costs. All concur.