# CHARLESTON.

CHARLES LISTING *v.* FRANK S. RODES, *et al.*

Submitted March 11, 1924.     Decided March 18, 1924.

COVENANTS.—*Word "Warrants" in Deed Operates as General Warranty of Title.*

> Where a conveyance is made whereby the grantor "Conveys and Warrants" a tract of land to the grantee, the word "Warrants" is not a word of conveyance of, but assurance, of title, and operates as a general warranty of title under section 13, chapter 72, of the Code.

Appeal from Circuit Court, Kanawha County.

Action by Charles Listing against Frank S. Rodes and others. From a decree for plaintiff, defendants appeal.

*Reversed and remanded.*

*Murray Briggs,* for appellants.
*Mathews, Campbell & McClintic,* for appellee.

MEREDITH, PRESIDENT:

Plaintiff Listing conveyed lot 27, block 25, and an eight foot strip off of lot 28, all in South Charleston, to defendant Frank S. Rodes, a part of the purchase price being represented by four purchase money notes aggregating approximately $2825.00. The notes were secured by a vendor's lien, as well as by a mortgage executed by both defendants, and plaintiff brings this suit to satisfy his lien. Pending adjudication of the matter, in order to secure a release of the lien, defendants executed a bond with corporate surety to secure the payment of any sum which should be decreed against them, and the final decree of the circuit court was in favor of the plaintiff against defendants and their surety for the full amount of the notes plus accrued interest. Defendants appeal.

Plaintiff's original bill, filed in December, 1921, alleged the conveyance of the property to defendant; the execution

by defendants of the notes and the mortgage securing them; the failure of defendants to pay the first note or the interest thereon, though the same was long past due; and under the accelerative provisions of the mortgage relative to the maturity of the notes, the plaintiff prayed for a decree against defendants for the amount of the notes and for general relief. He filed as exhibits the four notes and the mortgage. At May rules, 1922, plaintiff filed an amended and supplemental bill. In it he partially deraigned the title to the property involved, extending back to a conveyance dated April 20, 1917, from George W. McClintic and wife to defendant Rodes. He adopted the allegations of the original bill, and prayed in addition that "the said mortgaged premises be sold as the court may direct to satisfy such debts and costs." He filed as additional exhibits: (1) Deed with special warranty, dated April 20, 1917, from George W. McClintic and wife to F. S. Rodes covering among other lots all of lot 27 and 8 feet of lot 28, being the same property conveyed to the grantor, etc.; (2) Deed with special warranty, dated April 20, 1917, from F. S. Rodes and wife to J. J. Lovell, Jr., covering lot 27; (3) Deed with general warranty, dated March 28, 1919, from J. J. Lovell and wife to Charles Listing, for lot 27; (4) Deed with special warranty, dated September 17, 1919, from Frank S. Rodes and wife to Charles Listing for an eight foot strip, part of lot 28; and (5) Deed, dated August 9, 1920, from Charles Listing and wife to Frank S. Rodes for lot 27 and the 8 foot strip, part of lot 28. This is the deed, the consideration for which is represented by the notes sued on, and the nature of the warranty will be discussed hereafter.

In September, 1922, defendants answered. They first sought permission from the court to execute the bond heretofore referred to; they admitted the conveyance from plaintiff to defendant F. S. Rodes, which they averred was a general warranty deed, and accepted by defendant as such; they also admitted the execution of the notes and mortgage, but averred that while at the time the transaction was entered into they believed that plaintiff had good title to the real estate he attempted to convey, they learned a short time prior to the date of the maturity of the first note, August 1923, that E. T.

Crawford, a former owner of lots 27 and 28, was still claiming and was the true owner of so much of both lots that plaintiff did not own at the date of his conveyance to defendant more than about two-thirds of the property he purported to convey. The nature of Crawford's claim is shown by the answer and exhibits filed therewith. These exhibits are the three deeds in the chain of title immediately preceding the deed from McClintic and wife to F. S. Rodes. They are: (1) Deed dated May 14, 1910, from E. T. Crawford and wife for a part of lots 27 and 28 (describing the particular portion conveyed) to J. Wilcox Adams; (2) Trust deed dated September 28, 1912, from Adams and wife to V. L. Black, Trustee, of "three certain lots or parcels of land and being in the Tenth Ward in the City of Charleston, and being lots 25, 26 and 27 of Block No. 25 * * * and being the same lots conveyed" etc.; and (3) Deed dated October 9, 1916, from V. L. Black, Trustee, to George W. McClintic, in which the description of the property conveyed is in substance the same as the description in the deed from Adams to Black, Trustee.

The material point is that the deed from Crawford conveyed only a part of lots 27 and 28, and that the portion of the lots not conveyed has apparently never been disposed of by Crawford. As is already made evident by our reference to the deed from plaintiff to defendant, that conveyance describes the subject of the grant as lot 27 and a strip 8 feet wide of lot 28. It is conceded that in view of Crawford's claim plaintiff did not own all of the property he purported to convey.

The gravamen of defendant's answer so far as the present issue is concerned is that since plaintiff's title was imperfect he could not lawfully collect the residue of the purchase money until he procured for Rodes Crawford's interest in the land; or in default thereof should abate the purchase price to the extent of the value of the portion of the land not conveyed. Defendants allege that plaintiff had not attempted to procure Crawfords title, nor had he offered to abate the purchase price, but that he insisted on full payment. They pray that the purchase price be properly abated and for general relief.

Other pleadings were filed in the proceedings, but they do not materially affect the real question which counsel present for determination. That question is whether or not under the deed from plaintiff to defendant F. S. Rodes, defendants are entitled to an abatement of the purchase price because of the defect in the title. That abatement defendants claim should amount to at least $960.00. Plaintiff is obdurate in his refusal to agree to any abatement. Defendants insist upon it. The inquiry which would naturally arise and which does arise and which forms the real bone of contention in this matter is whether or not under the terms of his conveyance plaintiff assumed responsibility for the defect in the title which he purported to convey. As it is firmly established that in the absence of a warranty a grant of real estate does not imply an assertion of title in the grantor, *Mining & Mfg. Co.* v. *Coal Co.*, 8 W. Va. 406, the case resolves itself into the one question whether or not the grantor warranted the title to the property he purported to convey.

Plaintiff contends there was no warranty, that he bears no responsibility for the defect in the title and that he is entitled to a decree for the full amount of the purchase money notes, and the circuit court expressly so held.

Both parties rely upon the language of the conveyance. It is the form of deed in general use in Illinois (Illinois Annotated Statutes, Vol. II, §2240), and the portion thereof which it is necessary for us to consider is as follows:

> "This indenture witnesseth, that the Grantors, Charles Listing and Helen P. Listing, his wife, of the City of Chicago in the County of Cook and State of Illinois for and in consideration of the sum of Ten Dollars and other good and valuable consideration in hand paid, Convey and Warrant to Frank S. Rodes of the City of Charleston, County of Kanawha and State of West Virginia the following described real estate, to-wit:" etc.

To put the matter concisely, what is the import of the above expression: "Convey and Warrant"? If the warranty which defendants rely upon is not found in that expression, it is nowhere in the deed. Both parties agree that this ques-

tion is to be settled according to the laws of this state, the situs of the land. There could be no dispute about that.

It is not easy in this case to bring the discussion to a head by citing the positions of the parties. Their propositions can not be briefly stated. That the issue may not be obscure, however, we will review their theories as we conceive them.

Plaintiff contends that the only warranties of title in use at the present time in this state are of two kinds or classes: (1) A class of covenants or warranties, the result of custom or practice in Virginia and this state, known as "Modern Covenants of Title", and (2) The statutory warranties provided by sections 12, 13, and 15 of chapter 72, Barnes' Code, 1923. Referring to Vol. IV of Minor's Institutes, page 52, plaintiff defines a "Modern Covenant of Title" as follows:

> "Any words which convey the idea designed, except only the word *'warrant,'* by itself, or with the auxiliaries *'shall'* or *'will'* constitute a modern covenant of title. The word *'warrant'* is appropriated in law to express *the ancient warranty,* and not a modern covenant of title. But the phrase *'to warrant and defend'* or *'covenant to warrant',* etc., constitutes a modern covenant. (2 Min. Insts., 4th. ed. 717 et seq.; 2 Lom. Dig. 318, 321, 343; *Tabb* v. *Binford,* 4 Leigh 132; V. C. 1873, ch. 113, secs. 9, etc.; V. C. 1887, ch. 108, secs. 2445 et seq.) ".

Since in the expression "Covenant and Warrant" the only word which indicates a covenant or warranty of title is the word "warrant" alone, plaintiff argues, and perhaps correctly, that the plaintiff's deed contains no "Modern Covenant of Title" as defined by Minor.

Plaintiff then refers to the statute, secs. 13 and 15, ch. 72, Code, which read:

> Sec. 13. "A covenant by the grantor in a deed 'that he will warrant generally the property hereby conveyed', shall have the same effect as if the grantor had covenanted that he, his heirs and personal representatives will forever warrant and defend the said property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of all persons whomsoever."

Sec. 15. "The words 'with general warranty', in the granting part of any deed, shall be deemed to be a covenant by the grantor 'that he will warrant generally the property hereby conveyed.' The words 'with special warranty', in the granting part of any deed shall be deemed to be a covenant by the grantor 'that he will warrant specially the property hereby conveyed.' "

Section 14 prescribes the effect of a special warranty.

The conclusion which plaintiff then draws is that the Legislature by the enactment of these sections has established a form for, and defined the legal import of a general warranty of title. The form, he argues, may consist of two groups of words, "will warrant generally the property hereby conveyed", or "with general warranty". As these expressions are of statutory creation, he contends that they must be strictly followed by the conveyancer, otherwise there is no general warranty. Evidently, the present deed does not meet this test.

Having shown to his satisfaction that the expression "Convey and Warrant" is neither a "Modern Covenant of Title" nor a statutory general warranty, plaintiff then explains what he believes to be the legal effect of the phrase, or more particularly, the word "warrant". He says:

"There is no implied warranty in this state in reference to the grant of real estate. The word 'warrant', as used in the deed from Listing to Rodes, is an operative word of conveyance, and is not a word of warranty and a warranty can not be implied therefrom."

Thus plaintiff gives us a positive as well as a negative explanation of the legal effect of the word "warrant" as used in the present case.

Defendants' position, as disclosed by their brief, is much less labored. They choose two propositions upon which their case must stand or fall. The first of these is that the word "warrant" is not a word of conveyance, but must be construed as having all the attributes of the word "warranty". This argument is to refute plaintiff's assertion that the word is an "operative word of conveyance." The second point is that subsequent to the enactment of secs. 13 and 15, ch. 72,

Code, this court in the case of *Allen* v. *Yeater*, 17 W. Va. 128, announced the following propositions:

> "Warranties of title in conveyances are either 'general' or 'special'. If the grantor would limit his liability, he must insert a covenant of 'special warranty'. If he does not do so but conveys with 'warranty' the covenant must be regarded as a 'general warranty.'"

From this it is contended that it has been judicially determined that the statutory expressions "will warrant generally" or "with general warranty" need not be strictly followed, but that such phrases as "with warranty" or "convey and warrant" will be regarded as general warranties.

Does the expression "convey and warrant" operate as a general warranty of title? That is the question.

Although in arriving at our conclusion in this matter, we have taken great pains to study the properties of a warranty from an historical standpoint, we can in this opinion but touch the outstanding points covered in that review. We need only say that the "ancient warranty" of title dates to the reign of Edward III in England, from which time at least it was very generally used in conveyancing. It was a covenant real for the breach of which a personal action could not be maintained. The remedies for its violation were three: rebutter, voucher to warranty, and warrantia chartae. About the time of the birth of the land law in this country, more particularly in Virginia, personal property was coming to be of more account than formerly. Men dealt in money and other commodities more susceptible of transfer than land. It was but natural, therefore, that the remedies above referred to, all of which were designed essentially for compensation by the grantor in lands in case of the breach of his warranty, should fall into disuse. Particularly was this true as they were not readily adaptable to our system of land tenure. Whether or not they were ever actually a part of our common law system seems to have been a much debated question in the early days of the Virginia court. See *Stout* v. *Jackson*, 2 Rand. 132. The voucher to warranty seems to have definitely expired when the writ of right was abolished by statute, sec. 38, ch. 90, Barnes' Code, 1923; 2 Minor's Inst. p. 637, and

if, as was said by Judge Coalter in the case just referred to, warrantia chartae was ancient and obsolete at that time, it would be no less obsolete now. We approve the language of the court in *Tabb's Administrator* v. *Binford,* 4 Leigh 133.

> "Whether the writ of warrantia chartae be an existing remedy with us at this day I shall not undertake to decide, but this I may say, so entirely have the personal covenants in conveyances superseded the old common law warranty that there is not one man in ten thousand who, when he stipulates for a deed with warranty, means to take the common law assurance which binds the lands only of his vendor and gives him no remedy but the warrantia chartae. In truth this is never the intention of the contracting parties * * * *."

To say that the cumbersome remedies on the ancient warranty expired through disuse, however, is not to say that all the essential characteristics of the warranty were departed from. The words "warrant" and "warranty" remained with full vigor and life. They always retained the peculiar signification of assumption of responsibility on the part of the warrantor for defects in the title granted by him. As time went on new and different combinations of words came into use, such as "warrant and defend" (See *Tabb* v. *Binford, supra,*) "covenant to warrant", etc., expressions devised to convey the particular idea intended, and thus it was that there were recognized in the law the modern covenants of title.

In England also the so-called "ancient warranty" gave way to covenants affording a more easy remedy, and Lomax in Vol. II of his Digest at page 263 lists the five covenants which had come into general usage in that country. On the following page he then notes that the reports of the Supreme Court of Virginia had not distinctly shown the proper covenants for use in the state. However, he makes this remark:

> "There is a form of covenant here in common use, a covenant of general warranty, binding the covenantor and his heirs against everybody; and a covenant of special warranty, binding only against particular classes of persons."

The author then cites Vol. II, Tucker Commentaries, p. 458, to the effect that the covenant of sale in fee entitles the purchaser "to a deed with general warranty and proper covenants for defense of his title." See also, *Bucher* v. *Lowther,* 6 Leigh 259. Lomax published his Digest about 1839, and the edition of Tucker's Commentaries referred to was written at an earlier date.

In the report of the Revisors of the Code of 1849, page 607, in a foot-note, we find the following:

> "In other points of view the chapter (117) is of more importance. In Virginia there is rarely to be found in a deed of bargain and sale, any covenant but that of general warranty."

With these declarations in mind, recall now the contention of plaintiff that the covenant of general warranty is of statutory creation, and that the statute must be strictly followed. Sections 13 and 15 of ch. 72, Code, which we have quoted and upon which he relies, never appeared in legislative enactment until the Revised Code of Virginia of 1849 was adopted, and in the face of the statements of Lomax, Tucker and the Code Revisors, and the very general use of the expression "General Warranty", plaintiff maintains that the statute creates two artificial phrases "will warrant generally" and "with general warranty", that it gives them and them only the effect of a general warranty of title, and that it prescribes what that effect shall be. We think that this is an erroneous impression. We think and hold that the Legislature, recognizing the fact that covenants which were in substance and effect covenants of general warranty were in common use, found it necessary to declare the effect of such a covenant. Foreseeing or knowing from experience the likelihood of litigants quibbling over the verb requisite to such a warranty, they added the additional section giving full effect to the expression "with general warranty" in the granting clause of a deed.

We think that both before and after the enactment of the sections in 1849 the word "warrant" had come in general acceptance to have the meaning of "general warranty" unless otherwise limited. It was not the technical "ancient war-

ranty'', nor was it a ''Modern Covenant of Title'', nor yet a statutory creation to be strictly followed. The word ''general'' was used, we think, because the covenant was designed to protect against the claims of all persons whomsoever. 2 Tiffany, Real Property, (3rd. ed.) p. 1677. Such a warranty is essentially an outgrowth of our own custom and practice, ''peculiar to the American states'', Maupin, Marketable Title, 3rd. ed. p. 356. Sections 13 and 15, ch. 72. Code, are not in derogation of our common law. They but declare the principles already established. The decision in *Allen* v. *Yeater, supra,* holding that in the absence of contrary circumstances, the expression ''with warranty'' should be regarded as the equivalent of ''with general warranty'' seems to us to be fully in accord with the spirit and substance of the matter, and we apply the same principle here.

We hold that plaintiff by his express words intended to warrant the title generally, and must carry the responsibility for the defect in the title which he purported to convey.

Our judgment is to reverse the decree of the circuit court in so far as it refuses to abate from the purchase price of the property the value of the outstanding interest owned by Crawford; and we remand the case for further proceedings.

*Reversed and remanded.*