WILLIAM J. STUART, Plaintiff, *v.* RUDOLPH SPITZER, Defendant.

City Court of New York, March 20, 1925.

Sales — remedies of buyer — damages — motion to set aside verdict for plaintiff and to vacate judgment dismissing defendant's counterclaim in action for goods sold and delivered — counterclaim demanded damages for plaintiff's failure to deliver certain merchandise manufactured by plaintiff for defendant — contract called for delivery of merchandise f. o. b., Hanover, Ill.— measure of damages for breach by seller of contract f. o. b. point of shipment, in absence of market value at place of delivery, is value in neighboring markets (Pers. Prop. Law, § 148, subd. 3) — refusal to allow defendant to prove market value of merchandise at Chicago and New York reversible error.

The measure of damages for the breach by the seller of a contract f. o. b. point of shipment, if there be no market value for the goods at the place of shipment, is the value of the goods at the time fixed for delivery at neighboring markets after making allowance for the cost of transportation between the points of shipment and delivery (Pers. Prop. Law, § 148, subd. 3).

Accordingly, it is reversible error requiring the vacation of a judgment directing a verdict for the plaintiff and dismissing defendant's counterclaim in an action for goods sold and delivered to refuse the opportunity of proving the market value of the goods at New York and Chicago, where it appears that the counterclaim sought damages for the plaintiff's failure to deliver certain merchandise manufactured by the plaintiff for defendant under a contract calling for delivery f. o. b., Hanover, Ill., and that there was but one mill, the plaintiff's, at that point manufacturing the merchandise contracted for, since to confine defendant to the market value at the place of shipment, .where the only seller was the person from whom defendant was seeking damages, is illogical.

MOTION by defendant to set aside verdict for plaintiff, to set aside and vacate judgment dismissing defendant's counterclaim, and for a new trial.

*Thomas G. Prioleau,* for the plaintiff.

*Roe, Lilly & Kramer* [*Cecil Ruskay* of counsel], for the defendant.

McKEE, J.:

This is a motion to set aside a directed verdict. In an action for goods sold and delivered the defendant admitted his liability for $1,262.27, the amount sued for, but set up a counterclaim for $1,500 damages for the plaintiff's failure to deliver certain other goods manufactured by the plaintiff which the defendant alleges he purchased from the plaintiff and which the plaintiff failed to deliver. At the end of the defendant's case a motion was granted for a direction of a verdict for the plaintiff for the amount conceded by the defendant and dismissing the defendant's counterclaim on the ground that the defendant had failed to prove his damages. The contract, if any, called for the delivery of certain woolens f. o. b., Hanover, Ill. The defendant proved that there was only one mill manufacturing woolens in the town of Hanover, Ill., and that mill was the plaintiff's. Upon this proof the defendant attempted to prove the market value of the woolens in Chicago and New York. This he was not permitted to do upon objection by the plaintiff. This decision, therefore, goes only to the court's ruling on the question of whether or not the defendant had a right to prove the market value of the goods in places other than Hanover, Ill.

Where a seller fails to perform his agreement, the remedy of the buyer is clearly set forth in the Personal Property Law, section 148, as added by Laws of 1911, chapter 571. The measure of damages is also clearly set forth in paragraph 3 of the same section. It is as follows:

" 3. Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

The place of the market price is not explicitly set forth in the statute, but the decisions universally hold that the measure of damages is the difference between the contract price and the market value at the place of delivery, and in the recent case of *Standard Casing Co., Inc.,* v. *California Casing Co., Inc.* (233 N. Y. 413, revg. 197 App. Div. 187), the Court of Appeals has expressly held that the measure of damages for a breach by the seller of a contract f. o. b. point of shipment, is the difference between the contract price and the market price at the place of shipment. However, the court stated that " Market conditions or other special causes

may make departure from it necessary in obedience to the fundamental requirement of reparation for the loss."

This is particularly true if there be no market for the goods at the place of delivery. The rule then is that if there is no market value at the place of delivery, the proper value of the goods at the time fixed for delivery is to be shown by the best evidence possible, and if there is a neighboring market, the price at such market is competent evidence after making due allowance for the cost of transportation between points.

The question here is whether or not there was such absence of a market in Hanover, Ill., as to permit the defendant to prove a market value at other places.

In *Rice* v. *Manley* (66 N. Y. 82) the only market for cheese in Cattaraugus county was for transportation to and sale in New York. In that case the court held it was competent to prove the value of the cheese in New York and the cost of transportation there with a view of placing before the referee facts which would enable him to estimate plaintiff's damages.

In *Harris* v. *Panama Railroad Company* (58 N. Y. 660) the court, in admitting evidence of market value at San Francisco, stated: " This species of evidence could only be completely reliable where it appears that similar articles have been bought and sold, in the way of trade, in sufficient quantity or often enough to show a market value, and in the absence of such proof, proof of such value at some other place was admissible."

In *Durst* v. *Burton* (47 N. Y. 167) the place of delivery was Frankfort, but, by the terms of the contract, New York was the market to which the merchandise was to be forwarded, where it was to be sold and the market price there was regarded as within the contemplation of the parties. The court held that it follows: " That the value at another place or at another time would not be material unless it tended to prove the value at that time and place   *   *   *. So the price at other places may be shown, under some circumstances, for the purpose of proving the value at the designated place (22 Barb. 154).   *   *   *   Where the evidence is clear and explicit at the place of delivery, the value at other places is not strictly competent (8 Wend. 435)."

A case, however, even more clearly in point is that of *Grand Tower Co.* v. *Phillips* (23 Wall. 471). In that case the action was brought to recover damages for breach of contract whereby coal was to be delivered at Grand Tower on the Mississippi river. The trial court decided that the plaintiffs were entitled to the actual damages sustained by them for the non-delivery of the quotas of coal for October and November, and on the question of damages

allowed them to show the prices of coal at all points on the Mississippi river below Cairo, even to New Orleans. In reviewing the ruling of the trial court, Mr. Justice BRADLEY wrote: "Now although it is probable that the plaintiffs could have got the prices which the evidence showed were obtained for coal at and below Cairo, had their coal been furnished according to the agreement, yet the rule of law does not allow so wide a range of inquiry, but regards the price at the place of delivery as the normal standard by which to estimate the damage for nondelivery. It is alleged by the plaintiffs that this rule would have been a futile one in their case, because no market for the purchase of coal existed at Grand Tower, except that of the defendant itself, which, by the very hypothesis of the action, refused to deliver coal to the plaintiffs, and which had the whole subject in its own control. This is certainly a very forcible answer to the proposition to make the price of coal at Grand Tower the only criterion. It is apparent that the plaintiffs would be obliged to resort to some other source of supply in order to obtain the coal which the defendant ought to have furnished them. And it would not be fair, under the circumstances of the case, to confine them to the prices at which the defendant chose to sell the coal to other persons. The true rule would seem to be, to allow the plaintiffs to show the price they would have had to pay for coal in the quantities which they were entitled to receive it under the contract, at the nearest available market where it could have been obtained. The difference between such price and the price stipulated for by their contract, with the addition of the increased expense of transportation and hauling (if any), would be the true measure of damages. * * * But the prices of coal at New Orleans, at Natchez, and other places of distribution and sale, although they might afford a basis for estimating the profits which the plaintiffs might have made had the coal stipulated for been delivered to them, cannot be adopted as a guide to the actual damage sustained so long as any more direct method is within reach."

In this case and the one at bar the only market was the market established by sales made by the person against whom damages were sought to be recovered for the refusal to sell. The essence of the action is the refusal of the seller to complete a purchase. The theory of damage is that the purchaser's loss is measured by the market value of the article, because for this sum he can replace himself. It is illogical, therefore, to confine his damages to the difference between the contract price and the market price at the place of delivery, where at that place the only seller would be the person from whom the purchaser is seeking damages. This justifies

55

the dictum in *Standard Casing Co., Inc.,* v. *California Casing Co., Inc.* (*supra*), that market conditions or other special causes may make departure from the general rule necessary in obedience to the fundamental requirement of reparation for the loss. For these reasons the defendant should have been permitted to show the market value of the goods in question in neighboring markets.

Therefore, the defendant's motion is granted to set aside the verdict directed by the court and to set aside the judgment dismissing the defendant's counterclaim and for a new trial. Submit order.